**Opinion filed February 28, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00040-CR

_____

## RICHARD JOSEPH MARTIN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 70th District Court**
**Ector County, Texas**
**Trial Court Cause No. A-42,411**

## O P I N I O N

The jury convicted Richard Joseph Martin of murder and assessed his punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. Appellant brings five issues on appeal. In addition to challenging the sufficiency of the evidence supporting his conviction, Appellant contends that the trial court erred by instructing the jury on the law of parties,

admitting a photograph of Appellant's tattoo, and sustaining the State's objections to Appellant's closing arguments. We affirm.

*Background Facts*

Appellant was indicted for the murder of D'Quay Harris. The indictment alleged that Appellant intentionally and knowingly caused the death of Harris on or about January 31, 2013. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). The indictment also alleged that Appellant intentionally caused serious bodily injury to Harris by intentionally and knowingly committing an act clearly dangerous to human life by shooting Harris. *See id.* § 19.02(b)(2).

Ervin Terry testified that he, Appellant, and Harris were in a gang known as the "Rolling 60s Crips." Appellant was considered to be a leader in the gang. Terry testified that Appellant shot at him and Harris on January 31, 2013. Terry testified that Appellant shot at them because Terry and Harris "supposedly had robbed [Appellant]." Specifically, Terry testified that Appellant told him that someone had kicked in his door, robbed him, and hit his stepdaughter with a pistol. Appellant asked Terry and Harris to help him search for the people who had robbed him. Appellant told Terry not to bring any guns. Appellant and three others picked up Terry and Harris. When he picked up Terry, Appellant asked Terry if he had a gun, and Terry said that he did not. Terry suspected that Appellant believed that Terry and Harris were the people that robbed Appellant earlier in the day.

Terry testified that the group pulled over to the side of Rochester Street near Seminole Street to go to the restroom. After they got out of the cars, Appellant started shooting at Terry. Harris asked Appellant why he was shooting at Terry, and Terry saw Appellant turn toward Harris and point his gun at Harris. As soon as Appellant turned toward Harris, Terry ran off. He heard two different types of guns

but did not see anyone actually shoot Harris. However, Harris was shot multiple times, including being shot in the chest. Harris was left lying on the ground.

Andre Boyd testified that he and Terry saw Appellant a couple of days after the shooting. When they saw Appellant, Appellant hollered at Terry: "[Y]'all . . . got me nervous riding around strapped. I know [Terry] wants to try to seek revenge." Boyd testified that the next time he saw Appellant was when they were incarcerated together. Boyd discussed the shooting with Appellant, and Appellant told Boyd that he "felt messed up about the whole situation" when he learned that Harris was not the person who had robbed him. Boyd told Appellant the names of the individuals who had actually robbed Appellant, and Appellant responded that, if he could, he would "smoke" them right in front of Harris. Appellant asked Boyd, hypothetically, if a person had hurt Boyd's daughter, would Boyd have reacted in anger or "would [Boyd] just wait around and try to like investigate it like the law, or something."

The State offered a photograph of Appellant's tattoo into evidence during the guilt/innocence phase. During his opening statement, the prosecutor had described the tattoo in the following manner:

Under his nice suit on his left side, he has tattooed a trophy of his kill.

This event happened at the intersection of Seminole and Rochester. He has a tattoo of a bent stop sign at Seminole.

D'Quay Harris got shot in the chest. From this bent stop sign hangs a rat with its mouth taped shut, shot in the chest.

D'Quay Harris was paralyzed, couldn't use his legs. This rat has no legs. They've been torn off.

To the side of the rat is a woman going like this [holding her index finger in front of her lips] and on her eyebrow is the name Ke Loc, which is what Kevorick Shedwin goes by. He was there that night.

3

And, finally, on the other side is the name Desi. Desi is his stepdaughter who got robbed that night.

Thus, the jury was able to see that Appellant's tattoo reflected many of the details and circumstances surrounding the shooting.

As a result of his gunshot wounds, Harris was paralyzed from the chest down. Harris was released from the hospital on April 12, 2013. On May 29, 2014, however, Harris returned to the hospital with a urinary tract infection, which caused severe sepsis. Harris subsequently died on November 15, 2014.

*Sufficiency of the Evidence*

In his fourth issue, Appellant contends that the trial court erred in denying his motion for a directed verdict. In his fifth issue, Appellant challenges the sufficiency of the evidence supporting his conviction for murder. We treat a challenge to the trial court's denial of a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). Accordingly, we address Appellant's fourth and fifth issues together.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight

their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. PENAL § 19.02(b)(1). A person also commits murder if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. PENAL § 19.02(b)(2). Under either of these provisions, murder is a result-oriented offense—meaning that the proscribed conduct must have caused the death of the victim. *See Fraser v. State*, 523 S.W.3d 320, 328 (Tex. App.—Amarillo June 9, 2017, appellant's pet. ref'd, State's pet. granted). Appellant focuses his evidentiary challenge on the element of causation. Specifically, he contends that there is insufficient evidence that Harris's gunshot wounds caused Harris's death almost two years later.

"A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." PENAL § 6.04(a). In a murder prosecution, the State must prove beyond a reasonable doubt that the injuries inflicted by the defendant caused the death of the decedent. *Reeves v. State*, 101 S.W.2d 245, 246 (Tex. Crim. App. 1937); *Hutcherson v. State*, 373 S.W.3d 179, 187 (Tex. App.—Amarillo 2012, pet. ref'd). If the injuries caused by the defendant contributed to the death of the deceased, he is responsible even though other contributing causes existed. *Wright v.*

5

*State*, 388 S.W.2d 703, 706 (Tex. Crim. App. 1965). This is true even if complications arise during treatment of the victim, unless the evidence shows that those complications can be attributed to gross neglect or improper treatment. *See Jones v. State*, 582 S.W.2d 129, 134 (Tex. Crim. App. 1979) (citing *Turner v. State*, 505 S.W.2d 558, 560 (Tex. Crim. App. 1974)).

Dr. Susan Roe, the medical examiner who performed an autopsy of Harris's body, testified that the cause of Harris's death was complications from multiple gunshot wounds. She classified the manner of death as a homicide, which she defined as "death at the hands of another person." Dr. Roe did not find anything that would have caused Harris's death outside the succession of events that happened as a result of his gunshot wounds. Harris suffered paralysis and an injured lung as a result of the gunshot wounds. Dr. Roe testified that Harris was susceptible to infections because of the paralysis and the lung injury. Harris suffered pneumonia, multiple urinary tract infections, and infections from "pressure sores." Dr. Roe testified that these infections resulted in Harris suffering from sepsis at the time of his death. Specifically, she testified that "[t]he cascade of events that started due to the multiple gunshot wounds, and ultimately ended in the death, were due . . . to the gunshot wounds, and there was no intervening cause."

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the elements of murder beyond a reasonable doubt. Terry testified that he saw Appellant point a gun at Harris and that he then heard the sound of gunshots. Boyd testified to statements made by Appellant after the shooting indicating Appellant's involvement. Additionally, Appellant's tattoo is strikingly similar to the circumstances of the shooting, and it is indicative of Appellant's involvement in the shooting.

Furthermore, Dr. Roe testified that the gunshot wounds were the cause of Harris's death. Appellant contends that the medical evidence was insufficient because the State failed to account for a fourteen-month gap in Harris's medical treatment after he was shot. Appellant contends that it was plausible to conclude that Harris's infections and resulting sepsis were the result of gross neglect or improper treatment. We disagree with Appellant's analysis. There is no evidence in this case of gross neglect or improper treatment. As such, the evidence in this case is similar to the situation addressed in *Jones* wherein the court stated: "If a wound causes a disease which produces death and there is no evidence of gross neglect or improper treatment, the death is imputable to the wound." 582 S.W.2d at 134 (quoting *Turner v. State*, 505 S.W.2d 558, 560 Tex. Crim. App. 1974)). Even if improper treatment was a contributing cause of Harris's death, Appellant would not be absolved of criminal responsibility under Section 6.04(a) unless his conduct was "clearly insufficient" to have caused Harris's death. *See* PENAL 6.04(a); *Thompson v. State*, 93 S.W.3d 16, 21 (Tex. Crim. App. 2001). Viewing the evidence in the light most favorable to the jury's verdict, a rational finder of fact could have concluded that Harris's death was caused by his gunshot wounds, which resulted in his paralysis and an injury to his lung. We overrule Appellant's fourth and fifth issues.

*Charge on the Law of Parties*

In his third issue, Appellant contends that the trial court erred by including an instruction on the law of parties in the jury charge. He contends that this instruction was improper because the evidence was legally insufficient to support a jury verdict that Appellant was criminally responsible for another person's conduct. Assuming without deciding that the jury charge erroneously authorized Appellant's conviction under the law of parties, Appellant has not suffered harm from the error.

Appellant did not object to the law-of-parties instruction in the jury charge. Under *Almanza v. State*, unobjected-to jury charge error will not result in reversal of a conviction in the absence of "egregious harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

A trial court errs by submitting a law-of-parties instruction if the evidence adduced at trial would not support a jury verdict under the law of parties. *Ladd v. State,* 3 S.W.3d 547, 564 (Tex. Crim. App. 1999). However, if the evidence "clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless." *Id.* at 564–65 (quoting *Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986)). An appellant is not harmed by the inclusion of an instruction on the law of parties if the jury "almost certainly did not rely upon the parties instruction in arriving at its verdict, but rather based the verdict on the evidence tending to show appellant's guilt as a principal actor." *Id.* at 565. If guilt as a party would be "an irrational finding under the evidence, then it is highly unlikely that a rational jury would base its verdict on a parties theory." *Cathey v. State*, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999).

As discussed above, the evidence was sufficient to establish Appellant's guilt as the primary actor. Thus, even if we assume error in the jury charge by the inclusion of the instruction on the law of parties, the error is harmless because the

evidence supports Appellant's guilt as the primary actor. *See Cathey*, 992 S.W.2d at 466. We overrule Appellant's third issue.

*Tattoo Evidence*

In his first issue, Appellant contends that, during the guilt/innocence phase, the trial court erred in admitting a photograph of his tattoo. Appellant made several objections to the State's offer of the tattoo. He alleged that the tattoo was not relevant and that its probative value was substantially outweighed by the danger of unfair prejudice. He also asserted that the admission of the tattoo violated his First and Fifth Amendment rights. On appeal, Appellant contends that the trial court erred by overruling each of his objections.

Whether to admit evidence at trial is a preliminary question to be decided by the trial court. TEX. R. EVID. 104(a); *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App. 2012). We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)).

Appellant contends that the tattoo was not relevant. Appellant asserts that there is a prevailing "no-snitch culture" among young people, particularly in communities with gang problems. Appellant asserts that the tattoo was not relevant because it is a call for informants not to cooperate with law enforcement.

To be admissible at trial, evidence must be relevant. TEX. R. EVID. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. The trial court did not abuse its discretion in determining that the tattoo was relevant. The tattoo, which appeared to

be a depiction of the murder, was relevant to prove that Appellant was involved in the murder of Harris. It was also probative of Appellant's motive and intent. Additionally, this evidence was relevant to rebut Appellant's suggestion that Terry was the person who shot Harris.

Appellant next contends that the probative value of the tattoo was substantially outweighed by its prejudicial effect. Appellant further asserts that the prejudicial nature of the tattoo was so extreme that it effectively eroded Appellant's presumption of innocence.

Under Rule 403, relevant evidence may be excluded if its "probative value is substantially outweighed by a danger of . . . unfair prejudice." TEX. R. EVID. 403. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002) (citing *Montgomery*, 810 S.W.2d at 376). When we review a trial court's determination under Rule 403, we reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery*, 810 S.W.2d at 392). An analysis under Rule 403 includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). Rule 403, however, does not require that the balancing test be performed on the record. *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd).

By its express terms, evidence is not excludable under Rule 403 for merely being prejudicial—the rule applies to evidence that is *unfairly* prejudicial. Evidence

is unfairly prejudicial when it has an undue tendency to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). There is no question that the tattoo evidence was prejudicial. The bigger questions are whether it was unfairly prejudicial and, if so, whether its probative value was substantially outweighed by the danger that it was unfairly prejudicial.

The tattoo was highly probative because its details depicted many of the circumstances surrounding the shooting. In many respects, the tattoo can be viewed as a confession. While this evidence was obviously prejudicial, it was not unfairly prejudicial because it did not address an extraneous matter but rather addressed the offense for which Appellant was being tried. Additionally, the presentation of the tattoo evidence did not take much time to develop. The State called one witness to authenticate the photograph of the tattoo, and the trial court did not allow the State to ask the witness any additional questions about the details of the tattoo. Furthermore, the State needed this evidence to corroborate the testimony of its two witnesses. Neither of the witnesses actually witnessed Appellant shoot Harris, and Appellant called their credibility into question. Accordingly, the trial court did not abuse its discretion in determining that the probative value of the evidence was not substantially outweighed by a danger of unfair prejudice.

We also disagree with Appellant's assertion that the tattoo was so prejudicial that it eroded his "presumption of innocence." Section 2.01 of the Penal Code provides that "[a]ll persons are presumed to be innocent" and "[t]he fact that [a person] has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial." PENAL § 2.01; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.03 (West Supp. 2018). The "presumption of innocence" is "an assignment of a burden of proof prior to trial based on the

substantive law requiring the State to prove guilt beyond a reasonable doubt." *Madrid v. State*, 595 S.W.2d 106, 110 (Tex. Crim. App. 1979). "When a jury is told of the presumption [of innocence], it is told, in effect, to judge an accused's guilt or innocence solely on the basis of the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody." *Miles v. State*, 204 S.W.3d 822, 825 (Tex. Crim. App. 2006). The presumption of innocence is most often an issue when a defendant is required to wear prison clothing or restraints at trial. *See Parker v. State*, 51 S.W.3d 719, 722 (Tex. App.—Texarkana 2001, no pet.). The admission of the tattoo evidence did not affect Appellant's presumption of innocence because it did not concern his arrest, indictment, or custody.

Appellant also asserts that the admission of a photograph of the tattoo in the guilt/innocence phase violated his Fifth Amendment right against self-incrimination. He contends that the tattoo was not on public display because it was on an area of his body that is ordinarily covered by clothing. Appellant also contends that he was compelled to provide this evidence against himself because the trial court issued an order allowing the State to take a picture of the tattoo for trial purposes. We disagree.

The Fifth Amendment does not protect against the compelled production of every sort of incriminating evidence. *Fisher v. United States*, 425 U.S. 391, 408 (1976). The privilege protects a person only against being incriminated by his own compelled testimonial communications. *Id.*; *see also Williams v. State*, 116 S.W.3d 788, 791 (Tex. Crim. App. 2003). Testimonial communications are those that "explicitly or implicitly, relate a factual assertion or disclose information." *Doe v. United States*, 487 U.S. 201, 210 (1988). The United States Supreme Court has held that documentary communications are not compelled testimonial communications within the meaning of the Fifth Amendment when voluntarily prepared prior to the

requested production. *Fisher*, 425 U.S. at 409–10 & n.11 (stating that one reason subpoenaed documents were not "compelled testimonial communications" is because "the preparation of all of the papers sought in these cases was wholly voluntary"; "unless the Government has compelled the subpoenaed person to write the document, . . . the fact that it was written by him is not controlling with respect to the Fifth Amendment"). Production of a preexisting document does not "compel the [defendant] to restate, repeat, or affirm the truth of the contents of the documents." *Id.* Although the tattoo's relevance is derived from what it communicated to others, Appellant was not compelled by State actors to create it. In this way, Appellant's tattoo is more akin to a preexisting documentary communication than to a compelled testimonial communication.

The Court of Criminal Appeals has held that the display of a defendant's tattoos to the jury is not a violation of the right against self-incrimination. *Canales v. State*, 98 S.W.3d 690, 697 (Tex. Crim. App. 2003) (citing *Whitlock v. State*, 338 S.W.2d 721, 723 (Tex. Crim. App. 1960)); *see Garza v. State*, 213 S.W.3d 338, 347 (Tex. Crim. App. 2007); *Sauceda v. State*, 309 S.W.3d 767, 769 (Tex. App.—Amarillo 2010, pet. ref'd); *Garcia v. State*, 239 S.W.3d 862, 868 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *see also Butcher v. State*, No. 11-11-00288-CR, 2013 WL 5891603, at *7 (Tex. App.—Eastland Oct. 31, 2013) (mem. op., not designated for publication), *aff'd*, 454 S.W.3d 13 (Tex. Crim. App. 2015). These cases reflect that Texas courts have routinely treated tattoos as a personal characteristic, the same as "the color of a person's eyes, the sound of his voice, or the color of his hair." *Sauceda*, 309 S.W.3d at 769. As such, an accused can be compelled to disclose a tattoo to the jury irrespective of its location on the accused's body. *Id.* (addressing a tattoo located on the defendant's leg). Accordingly, the trial

court did not abuse its discretion in overruling Appellant's objection under the Fifth Amendment.

Finally, Appellant contends that the admission of the photograph of his tattoo into evidence violated his First Amendment right to free speech. He asserts that the tattoo was an expression of his cultural beliefs and opinions regarding the "no-snitch culture" and therefore constituted protected speech under the First Amendment. Although Appellant is correct in his assertion that a tattoo can be protected speech under the First Amendment, "the First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993). Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trials—subject to evidentiary rules dealing with relevancy, reliability, and the like. *Id.* The Texas Court of Criminal Appeals has noted that the First Amendment is not a per se barrier to the admission of evidence protected by it. *See Davis v. State*, 329 S.W.3d 798, 805 (Tex. Crim. App. 2010). Such evidence may be admissible if it is shown to be relevant to the issues involved in the case. *Id.* (citing *Dawson v. Delaware*, 503 U.S. 159, 161 (1992)). Here, the tattoo evidence was relevant, and the trial court did not abuse its discretion in overruling Appellant's objection under the First Amendment. We overrule Appellant's first issue.

### *Jury Argument*

In his second issue, Appellant contends that the trial court erred when it sustained the State's objections to two of Appellant's jury arguments. Appellant asserts that these arguments were essential to his defense. Appellant further asserts that these erroneous rulings denied his constitutional right to counsel.

We review the trial court's ruling on the State's objection to Appellant's jury argument for abuse of discretion. *See Davis*, 329 S.W.3d at 825. Permissible jury

argument falls into one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) an answer to the argument of opposing counsel, or (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Prohibiting counsel from making a particular jury argument is a denial of the defendant's right to counsel when that argument is one the defendant is entitled to make. *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989).

The first sustained objection that Appellant challenges occurred when Appellant's trial counsel argued as follows during closing argument: "[W]e got to the other prize witness, Andre Boyd, with cases dismissed by the District Attorney's office. An aggravated assault, a shooting over at the Brewery." The State objected that the trial court had previously sustained an objection to this evidence. The trial court sustained the State's objection to the defense counsel's argument. Appellant's trial counsel went on to argue: "So, I apologize, and I won't mention that again. Something, well, anyway. There was evidence of the Brewery in the case and a shooting there for Mr. Boyd." The State again objected, and the trial court sustained the objection. However, the trial court did not instruct the jury to disregard trial counsel's arguments that preceded the objection.

It appears that Appellant is asserting on appeal that the trial court erred by not permitting Appellant's trial counsel to offer argument about additional details surrounding the shooting at the Brewery. We disagree because no other details were offered at trial about the shooting at the Brewery. During the State's case-in-chief, Appellant's trial counsel cross-examined Boyd about a prior aggravated assault case that was dismissed. Boyd indicated that this aggravated assault case involved "a shooting at the Brewery." Appellant's trial counsel then asked Boyd about the details of the alleged offense. The State objected to this inquiry on the grounds that Appellant could not go into specific instances of conduct. The trial court sustained

the objection by ruling that trial counsel could not go into the specifics of Boyd's case that was dismissed. Accordingly, the trial court did not abuse its discretion by sustaining the State's objection to trial counsel's argument because no further details about the shooting at the Brewery were offered into evidence.

The second sustained objection that Appellant challenges occurred immediately after the previously addressed objection—when Appellant's trial counsel argued: "So, you got Andre Boyd there and he's a federal prisoner and hasn't been sentenced yet. And I did ask him about a 5K1. And he knew about it. Maybe you weren't listening, maybe you were. A 5K1 proceeding in federal court is you help the government - -." The State objected at this point, but the trial court overruled the objection. Appellant's trial counsel continued: "If you help the government out and awaiting sentencing, you can actually get a reduction - -." The State objected again, and the trial court asked the attorneys to approach the bench for a bench conference. During the bench conference, the trial court erroneously stated that Boyd had defined the 5K1 program in a previous trial that ended in a mistrial but not during this trial. Appellant's trial counsel informed the trial court that Boyd defined this term the preceding day during cross-examination. However, the trial court sustained the objection.

Appellant asserts on appeal that his trial counsel should have been allowed to explain what the term "5K1" means because there was evidence of it offered at trial. We agree. During the underlying trial, Boyd testified that 5K1 means that, "[w]hen you tell, you get time off." Additionally, Boyd answered in the affirmative to this follow-up question: "You tell on folks and then you get some time off your federal

sentence, correct?"[1]  Thus, the trial court erred by sustaining the State's objection. However, we disagree with Appellant that he was not permitted to present an argument that he wanted to make during closing argument.

Appellant asserts that the trial court's rulings during closing argument prevented him from challenging Boyd's veracity.  Specifically, Appellant contends that the trial court's rulings restricted him from showing that Boyd's testimony was compromised because the State dismissed the aggravated assault charge arising from the shooting at the Brewery or that Boyd might be receiving a reduced federal sentence on an unrelated charge if Boyd gave favorable testimony against Appellant. Despite the trial court's earlier rulings, Appellant's trial counsel was later able to make these arguments.    Specifically, trial counsel subsequently argued as follows:

> You see this Andre Boyd business.  How lucky for the State can they be?  What a lucky break for them that they brought you Andre Boyd.  How fortunate.  The best friend of Ervin Terry.  Grew up together.
>
> And they offer that testimony that somehow or another to make peace in the jail, or something like that, nice story, that Ricky Martin of all people confessed that to, of all people, Andre Boyd.
>
> Not the police, not somebody that didn't know Ervin Terry, some other jailhouse prisoner.  Andre Boyd.  How fortunate for them, ladies and gentlemen.
>
> Lucky break for the State that they were able to bring you this believable federal inmate Andre Boyd to firm up Ervin Terry's story.
>
> Lucky break.
>
> . . . .

---

[1] A "§ 5K1.1 motion" is a procedure whereby the U.S. Attorney's Office may seek a downward departure of a federal defendant's sentence under the federal sentencing guidelines if the defendant provides substantial assistance.  *See United States v. Garcia-Bonilla*, 11 F.3d 45, 46–47 (5th Cir. 1993).

So, if you convict him, you're doing it on the words of two could be and likely are, one of them I know for sure, Andre Boyd, I feel like, are liars. Up here trying to get some credit for themselves to soften the blow of the government's prosecution of them.

Because a trial court's improper denial of a jury argument that counsel is permitted to make is a denial of the right to counsel, it is constitutional error, subject to harm analysis under Rule 44.2(a) of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 44.2(a); *see Vasquez v. State*, 484 S.W.3d 526, 532 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Under Rule 44.2(a), we must reverse the judgment of conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. The primary question is whether there is a "reasonable possibility" that the error might have contributed to the conviction. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (citing *Wilson v. State*, 938 S.W.2d 57, 61 (Tex. Crim. App. 1996)). This analysis should not focus on the propriety of the outcome of the trial; instead, we should calculate as much as possible the probable impact on the jury in light of the existence of other evidence. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000) (citing *Garcia v. State*, 919 S.W.2d 370, 380 (Tex. Crim. App. 1994); *Miles v. State*, 918 S.W.2d 511, 517 (Tex. Crim. App. 1996) (plurality opinion); *Harris v. State*, 790 S.W.2d 568, 586–87 (Tex. Crim. App. 1989)). We consider the source and nature of the error, the extent that it was emphasized by the State, its probable collateral implications, the weight a juror would probably place on the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity. *Harris*, 790 S.W.2d at 587. This requires us to evaluate the entire record in a neutral, impartial, and evenhanded manner, not "in the light most favorable to the prosecution." *Id.* at 586 (quoting *Jackson*, 443 U.S. at 319).

Although Appellant was prohibited from arguing that one of the State's witnesses was familiar with the 5K1 program and what that meant, Appellant was permitted to present the substantive argument that his trial counsel desired to make— that both of the State's witnesses were "here trying to get some credit for themselves to soften the blow of the government's prosecution of them." "In evaluating whether a defendant was harmed by the trial court's exclusion of the defendant's argument, an appellate court may consider the extent to which the defendant communicated his argument despite the trial court's rulings." *Vasquez*, 484 S.W.3d at 532–33. As was the case in *Vasquez*, Appellant's trial counsel conveyed the gravamen of his desired argument to the jury despite the trial court's earlier rulings. *See id.* at 533. Accordingly, the trial court's error in limiting the discussion of the 5K1 program was harmless. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


February 28, 2019

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Willson, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.