Opinion filed May 16, 2024



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00245-CR
_____

## JOSE ALEXANDER CARRERA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 358th District Court**
**Ector County, Texas**
**Trial Court Cause No. D-18-2120-CR**

## M E M O R A N D U M   O P I N I O N

A jury convicted Appellant, Jose Alexander Carrera, of murder, a first-degree felony. *See* TEX. PENAL CODE ANN. § 19.02(b), (c) (West Supp. 2023). The jury assessed his punishment at twenty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice, and the trial court sentenced

him accordingly. On appeal, Appellant argues that the trial court erred when it admitted photographs depicting the two gunshot wounds on Jimmy Dale White, Jr., an eyewitness to the murder, that were inflicted during the same incident. We affirm.

*Factual and Procedural History*

Appellant shot and killed John Jimenez at a residence in Ector County. Miguel Espinosa, Appellant's accomplice, participated in the shooting that left Jimenez dead and Jimmy White wounded. Four photographs of White's gunshot wounds were admitted into evidence and are the subject of this appeal.

Appellant and White both lived with Trish Chatman for about three months prior to the shooting. White testified that he talked with Appellant every day, they "ate at the same table," and that he treated Appellant like a "little brother."

Appellant and Jimenez met approximately month before the shooting. Appellant had moved out of Chatman's house over a disagreement regarding rent, and he moved in with Amy Robinson. Robinson subsequently called Jimenez to "get [Appellant] out" of her house because Appellant stole from her. In response, Jimenez asked White to drive him to Robinson's house. White testified that when they arrived, Jimenez entered Robinson's house and stayed inside for a while. White then saw Appellant leaving the house on foot, with Jimenez behind him. Jimenez got back into the pickup with White, and they left. Regarding this interaction, Appellant testified during the punishment phase that Jimenez had talked to him in English for two or three minutes, but that he did not understand what Jimenez was saying.[1] He testified that Jimenez appeared upset. Appellant later returned to the

---

[1]Appellant testified that he did not understand Jimenez because, at that time, he "did not understand much [English]."

2

house to remove his belongings, and he saw Jimenez but said nothing to him. The next time that Appellant saw Jimenez was the night of the murder.

On the evening of the murder, White drove to Chatman's house to pick up Jimenez. At Chatman's house, White talked in the front yard with Yvette Sanchez, another friend. While they talked, White noticed the same vehicle pass by the house twice. After two passes, the vehicle pulled up to the house, parked, and Appellant exited the vehicle along with the driver, Miguel Espinosa. Both of them carried similar revolvers. Sanchez screamed and ran away before the shooting began.

White urged Appellant and Espinosa to put their guns down and fight "one-on-one," but Espinosa responded, "We don't do things like that." Appellant then approached Jimenez and asked in Spanish, "Do you remember what you did to me the other day?" Jimenez responded in Spanish, "Yeah, I remember. Do what you got to do."

In White's words, what came next "all happened so fast." White testified that Jimenez "bolt[ed] up on [Appellant]" and Appellant picked up his gun, put his gun to Jimenez's chest, and shot him. Then, Appellant ran off, and Espinosa shot White in the shoulder. White testified that, as White ran away, "they [were] shooting at [him]," putting bullet holes in a nearby fence until "the last one hit[]" White in the back. Although White did not see who fired the second shot, in his direct and cross-examination he did not dismiss Appellant as being the possible shooter. White testified that he stayed where he collapsed after being shot until officers and paramedics arrived.

Sergeant David Muniz of the Odessa Police Department found White at the scene and assessed his injuries. White identified Appellant by name as the person that shot him. Appellant turned himself in to the police after three days.

*Standard of Review and Applicable Law*

In his sole issue, Appellant argues that the trial court erred when, over Appellant's objections, it admitted four photographs depicting White's two gunshot wounds that were "inflicted . . . by a non-party to the case." Appellant contends that the photographs were irrelevant and unduly prejudicial, and that the trial court's admission of the photographs constituted harmful error. *See* TEX. R. EVID. 401, 403.

We review the trial court's admission of evidence under an abuse of discretion standard. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or when it acts arbitrarily or unreasonably. *Id.* at 669 (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim App. 1990)). Therefore, we uphold a trial court's ruling on admissibility if it is within the "zone of reasonable disagreement." *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021) (quoting *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)).

To be admissible, a trial court must first determine that the evidence is relevant. *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016). Relevant evidence is any evidence that has a tendency to make a fact more or less probable than it would be without the evidence that is also of consequence in the action. TEX. R. EVID. 401. Rule 403 provides that relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

"Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002) (citing *Montgomery*, 810 S.W.2d at 376);

*see Martin v. State*, 570 S.W.3d 426, 437 (Tex. App.—Eastland 2019, pet. ref'd). In this regard, Rule 403 only protects a criminal defendant against unfair prejudice, not all prejudice. *Ruiz v. State*, 631 S.W.3d 841, 865 (Tex. App.—Eastland 2021, pet. ref'd). "Rule 403 requires exclusion of evidence only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001). Therefore, in reviewing a trial court's Rule 403 determination, we will reverse the trial court's ruling only if a clear abuse of discretion is shown. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); *Montgomery*, 810 S.W.2d at 392; *Martin*, 570 S.W.3d at 437.

When undertaking a Rule 403 analysis, a trial court must consider several factors (the *Gigliobianco* factors) and balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Garcia v. State*, 630 S.W.3d 264, 268 (Tex. App.—Eastland 2020, no pet.) (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)).

When considering photographs under Rule 403, we also consider "the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case." *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim.

5

App. 2009). Generally, a photograph is admissible if verbal testimony about the photograph's depictions is admissible. *Ellison v. State*, 494 S.W.3d 316, 327 (Tex. App.—Eastland 2015, pet. ref'd).

Finally, the erroneous admission of evidence is subject to the nonconstitutional error standard set out in Rule 44.2(b) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 44.2(b); *Easley v. State*, 424 S.W.3d 535, 539–40 (Tex. Crim. App. 2014). Pursuant to Rule 44.2(b), an appellate court must disregard nonconstitutional error unless it affects the appellant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). A substantial right is affected if the error had a substantial and injurious effect or influence in determining the jury's verdict. *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). One's substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have fair assurance that the error did not influence the jury or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

When we assess the likelihood that the error adversely influenced the jury, we consider the entire record, including (1) the character of the alleged error and how it might be considered in connection with other evidence, (2) the nature of the evidence supporting the verdict, (3) the existence and degree of additional evidence indicating the defendant's guilt, and (4) whether the State emphasized the complained-of error. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018); *Motilla*, 78 S.W.3d at 355–56; *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000); *see Llamas v. State*, 12 S.W.3d 469, 471 (Tex. Crim. App. 2000).

*Analysis*

1. *Examination of the Photographs*

The evidence at issue consisted of four photographs, in color, depicting White's gunshot wounds as he laid in a hospital bed. The first photograph shows White from the chest up and shirtless. What appears to be a compression bandage covers the wound to his left shoulder, while the gunshot wound to White's right bicep has minimal dried blood near it. The second photograph shows the gunshot wound on White's left shoulder without the compression bandage. The wound is small but appears to include a thin residue of drying blood on the skin around the wound. The third and fourth photographs show the wound on White's right bicep. This gunshot wound is a small dark red spot, with a small amount of dark blood trailing from the wound. None of the photographs show obvious uncontrolled bleeding. Appellant argues that this visual content is gruesome and that the photographs were "numerous." We disagree. The photograps are not "so horrifying or appalling that a juror of normal sensitivity would necessarily encounter difficulty rationally deciding the critical issues of this case after viewing them." *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992) (quoting *Fuller v. State*, 829 S.W.2d 191, 206 (Tex. Crim. App. 1992)). Moreover, the number of exhibits— four—is not substantial, nor are the photographs unnecessarily large or particularly detailed. *See Williams*, 301 S.W.3d at 690–91.

Photographs depicting admissible testimony are not per se admissible, but they are usually admitted unless offered solely to inflame the minds of the jury. *See Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004) (citing *Martin v. State*, 475 S.W.2d 265, 267 (Tex. Crim. App. 1972)). The record does not support a

7

conclusion that the State offered these photographs solely to inflame the minds of the jury.

2. *Balancing under Rule 403*

A trial court's Rule 403 balancing analysis need not be on the record. *Roe v. State*, 660 S.W.3d 775, 784 (Tex. App.—Eastland 2023, pet. ref'd) (when overruling a Rule 403 objection, the trial court is assumed to have conducted the Rule 403 balancing analysis and determined that the evidence was admissible); *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd) (same).

A. *Relevance*

We first review the relevance of the photographs. White provided the only eyewitness testimony of the actual shooting. He also provided key evidence as to the events surrounding the shooting.

That White himself was shot during the fray was frequently referenced by him without objection. White related to the jury that with the arrival of Appellant and Espinosa at Chatman's home, they opened fire "fast" and that the entire incident occurred over a period of "three minutes tops." As to the accuracy of his observations of events at the scene, White was questioned as to his closeness to the action and the positioning of the parties during the incident. At trial, White could not recall the name of Espinosa so he repeatedly referred to Espinosa as "the guy [or person] who shot me." Appellant's Attorney referred to Espinosa as "the guy who shot you." White was questioned as to the spray of bullet holes photographed at the scene. Appellant's trial attorney asked White about being in the hospital as a result of having been shot at the scene. White was questioned about where he ran after being shot the first time. White was shot a second time while running away and, while questioned by both the State and the attorney for Appellant about the second

8

bullet wound, White did not exclude Appellant as the possible shooter. White's testimony as stated above was not objected to by Appellant at trial.

At trial, three witnesses testified without objection that White had been shot: Sergeant David Muniz, Sergeant Trent Autry, and White himself. Sergeant Muniz described how he secured the scene after the offense, and he testified about finding White at the scene and checking him for wounds. Sergeant Autry testified about meeting White at the hospital to collect information about the murder.

All of this testimony provided relevant context for the charged offense, as did the photographs. *See Carpenter v. State*, No. 11-15-00323-CR, 2018 WL 3763773 at *4 (Tex. App.—Eastland Aug. 9, 2018, no pet.) (mem. op., not designated for publication) ("The jury is entitled to know all of the 'relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum.'") (quoting *Prible v. State*, 175 S.W.3d 724, 732 (Tex. Crim. App. 2005)).

The State argues that the photographs of White's gunshot wounds were relevant not only because they depicted wounds that had been testified to at trial without objection, but also because Appellant was not excluded as the person who shot White after Espinosa had inflicted the initial gunshot wound. Further, the State argues that under the law of the parties, Appellant is equally responsible for pulling the trigger. An instruction on law of the parties was given by the trial court. In addition, Appellant's general intent to inflict serious bodily harm or death—a fact of consequence—may be reflected when in possession of his gun where multiple persons are wounded. We conclude that the challenged photographs, as well as evidence of all the gunshot wounds inflicted during the fray, were relevant. Therefore, the trial court did not abuse its discretion when it admitted the photographs over Appellant's relevance objection.

## B. *Rule 403 and the* Gigliobianco *Factors*

As we have said, Rule 403 favors the admission of relevant evidence, and the rule carries a presumption that relevant evidence will be more probative than prejudicial. *Hayes*, 85 S.W.3d at 815. Evidence is unfairly prejudicial when it has the undue tendency to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). The *Gigliobianco* factors guide our analysis.

### a. *Applying the* Gigliobianco *factors*

"The first two *Gigliobianco* factors focus on the probative force of and the State's need for the evidence." *Garcia*, 630 S.W.3d at 269. "Probative value" refers to the inherent probative force of an item of evidence—how strongly it serves to make the existence of a fact of consequence more or less probable—along with the proponent's need for the evidence. *Gigliobianco*, 210 S.W.3d at 641. The photographs display what the testimony already had established and discussed in detail—that White was shot twice during the shooting spree. In the photographs, the wound areas appear to have been cleaned up of excess blood and show two round dark areas on the skin consistent with bullets piercing the skin. We cannot say that the photographs tip the scales to an unduly prejudicial effect. As for the State's "need" for the evidence, its relevance, and its probative value, the photographs verified White's testimony that he was there when the incident occurred, helped explain the positioning of the actors and the victims, and helped explain the timeline of Sergeant Autry's investigation and his assessment of White's appearance when he arrived at the hospital. The photographs also could assist the jury in assessing the credibility of multiple witnesses and provided evidence for the jury to consider

10

whether it was possible for Appellant to have inflicted White's second gunshot wound. These are facts of consequence that the photographs, probative evidence of these facts, made more or less probable.

The remaining *Gigliobianco* factors focus on the potential negative effects of the proffered evidence. *Garcia*, 630 S.W.3d at 269. The third factor relates to the tendency of the evidence to suggest a decision on an improper basis. *Id.* at 268. Appellant argues that portraying White as a victim of an assault garnered White sympathy he might not have otherwise earned. Rather than suggesting an improper decision, the evidence verified relevant context of the facts and circumstances surrounding the murder and provided relevant facts and circumstances to show the condition of White. Moreover, the jury charge instructed the jury not to consider any acts or transactions committed by Appellant unless the jury found and believed beyond a reasonable doubt that Appellant committed such actions. The instructions minimized the risk of the jury improperly relying on such evidence in reaching its verdict. *See Kersh v. State*, No. 02-22-00088-CR, 2023 WL 3643235 at *5 (Tex. App.—Fort Worth May 25, 2023, pet. ref'd). We presume that the jury followed the trial court's instructions in the charge. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005).

We next turn to the fourth factor, any tendency to confuse or distract the jury. "Confusion of the issues alludes to the likelihood that the evidence would confuse the jury or distract them from the case's central issues." *James v. State*, 623 S.W.3d 533, 550 (Tex. App.—Fort Worth 2021, no pet.). The State introduced the photographs during Sergeant Autry's testimony regarding the timeline of his investigation, and briefly questioned Sergeant Autry regarding the photographs before asking him about the next steps in his investigation. The State did not

emphasize these photographs. Once admitted, they were not discussed again, and the State did not revisit the photographs during closing argument. The jury would not be confused or distracted from the central issues because the record is replete with testimony regarding White's gunshot wounds, which was not objected to and that was probed into further in the cross-examination of White by Appellant's trial attorney.

The fifth factor focuses on the potential for the evidence to be given undue weight by the jury or its potential to mislead the jury. *See Gigliobianco*, 210 S.W.3d at 641. Undue weight considers whether the jury was equipped to evaluate the probative force of the evidence. *Id.* The jury was equipped to evaluate the probative force of the photographs against the testimony and evidence of White's gunshot wounds in the midst of the spray of bullets at the scene, and the evidence had little potential to mislead the jury.

The final factor relates to the potential for the evidence to consume an inordinate amount of time at trial or is merely cumulative. *See id.* at 641–42. We cannot say that the admission of these few photographs represented an inefficient use of the jury's time. The time spent on the incident at trial and the involvement of White as a witness and a victim was substantial. But as to the time spent admitting and discussing the photographs, we cannot describe such time as substantial, much less "inordinate" or excessive. *See id.*

Considering the foregoing, we conclude that the trial court did not abuse its discretion when it admitted the photographs over Appellant's 403 objection. The photographs were probative on the issues that we have identified. We cannot say that the photographs served to distract the jury or suggest a decision on an improper basis, and the jury was equipped to evaluate their probative force. The time taken

to admit the was not inordinate. The trial court could have reasonably concluded that the probative value of the photographs was not substantially outweighed by the countervailing factors specified in Rule 403. *See id.* at 642.

Moreover, their admission did not influence the jury, or influenced the jury only slightly and therefore, was not harmful. After examining the record as a whole, we have fair assurance that these four photographs did not influence the jury or influenced them only slightly. Their admission did not result in unfair prejudice and did not affect Appellant's substantial rights. Appellant's sole issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS
JUSTICE


May 16, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.