**Opinion filed April 17, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00008-CR

_____

**CRISTIAN ESCARCEGA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 161st District Court**

**Ector County, Texas**

**Trial Court Cause No. B-22-0009-CR**

## M E M O R A N D U M   O P I N I O N

A jury found Appellant, Cristian Escarcega, guilty of the first-degree murder of Jesse Sanchez and assessed his punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 19.02(b), (c) (West Supp. 2024). The trial court sentenced Appellant accordingly. In two issues, Appellant challenges the sufficiency of the evidence in

support of his conviction and argues that the trial court abused its discretion in admitting an autopsy photograph where "the prejudicial value was great." *See* TEX. R. EVID. 403. We affirm.

*Background*

On the evening of October 31, 2021, Officer Tyler Thelen with the Odessa Police Department (OPD) was working off duty as a security guard for a local bar when he heard gunshots originating from an adjacent parking lot. Officer Thelen approached the noise and saw "muzzle flashes" originating from two males standing beside a dark gray Nissan.[1] At trial, Officer Thelen explained that the driver's side door and front passenger door of the Nissan were both open, and the two men had been standing "halfway in and out of the vehicle," respectively. The men then got into the Nissan and quickly drove away with the vehicle's headlights off.[2] Sanchez was later discovered lying face down underneath a white pickup, parked across from the initial location of the Nissan.

Travis Fraser, a former patrol sergeant with the University of Texas System Police, testified that he was responding to the call of shots fired when he observed a gray Nissan pulling out of the parking lot with no headlights on, driving at a "very high rate of speed." Sergeant Fraser immediately activated his lights and siren and pursued the vehicle. A chase ensued, reaching speeds of approximately 104 miles per hour. Sergeant Fraser testified that he never lost sight of the vehicle, and he was the lead officer in the pursuit until Ector County officials assumed control.

A patrol officer with the Ector County Sheriff's Office was in pursuit, and his dash camera recorded the Nissan slowing down on a dirt road moments before the

---

[1]Officer Thelen's body camera recording was admitted into evidence at trial, and Officer Thelen can be heard yelling out that a "dark gray Nissan" had just sped away.

[2]Surveillance footage from a nearby bar captured the shooting from a distance.

2

vehicle's two occupants jumped out of the vehicle and attempted to evade police on foot. Both men were apprehended shortly thereafter. The driver of the vehicle was identified as Martin Hernandez, and the passenger was identified as Appellant. Following Appellant's arrest, his hands were swabbed for gunshot residue (GSR). Rebekah Lloyd, a forensic scientist with the Texas Department of Public Safety (DPS), testified that Appellant's results were "consistent with either a person fir[ing] a weapon or being in the immediate proximity of a weapon that is being fired, or came in contact with a surface that had gunshot primer residue."

During Appellant's attempted escape, Matt Muehlbrad, a former Ector County Sheriff's Office patrol lieutenant, had remained with the abandoned Nissan. After ensuring that there was no one else inside the vehicle, Lieutenant Muehlbrad, along with other officers, located an armored vest, a 9-millimeter handgun, and an AR-15 rifle in the front-passenger-seat area.

In the parking lot where the shooting occurred, officers recovered several projectiles, as well as seventeen 9-millimeter shell casings and fifteen .223 shell casings. Darrell Morgan, a firearms examiner with the DPS crime lab in Lubbock, confirmed that the projectiles and shell casings came from the firearms recovered in the Nissan. DPS Ranger Brian Burney testified that based on the location of the shell casings recovered and the known location of the vehicles involved, there were two shooters: one, utilizing a 9-millimeter handgun, who would have been standing outside the vehicle near the passenger side; and the other, using the AR-15, who was likely standing near the driver's side. Ranger Burney further testified that it appeared that Sanchez had been ambushed as he was getting into his vehicle. As part of the investigation, OPD Detective James Santana reviewed surveillance footage from nearby bars and testified that Hernandez and Appellant had been waiting for thirty-three minutes in the parking lot before the shooting.

Dr. Luisa Florez, a forensic pathologist, performed the autopsy on Sanchez. Dr. Florez explained that although Sanchez had been shot several times, sustaining gunshot wounds to his right forearm, left shoulder, and right thigh, the cause of death was "blood loss due to the injuries of the left iliac." The bullet projectile severed an internal blood vessel that caused the death of Sanchez. Dr. Florez additionally opined that two different types of weapons had been used in the shooting: a "high velocity rifle" believed to have caused the lethal injury, and a handgun that caused the injuries on Sanchez's arms and shoulder. Twenty-four autopsy photographs were admitted into evidence depicting Sanchez's various injuries.

At the close of evidence, the jury was instructed on the law of parties. The jury found Appellant guilty of murder as charged in the indictment and assessed his punishment at life imprisonment. This appeal followed.

*Sufficiency of the Evidence*

Appellant first argues the evidence is insufficient to support his conviction for murder. Specifically, he contends that the State failed to establish that he was the person who shot Sanchez.

A.  *Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). In reviewing the sufficiency of the evidence to support a conviction, we must "consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found that the State has proven the essential elements of the crime beyond a reasonable doubt." *Baltimore v.*

*State*, 689 S.W.3d 331, 341 (Tex. Crim. App. 2024) (citing *Jackson*, 443 U.S. at 319). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021) (quoting *Jackson*, 443 U.S. at 319).

Therefore, "[i]f the record supports conflicting inferences, the reviewing court must 'presume that the factfinder resolved the conflicts in favor of the prosecution' and defer to the jury's factual determinations." *Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023) (quoting *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)). "[A] reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence." *Id.* (quoting *Isassi v. State*, 330 S.W.3d 663, 638 (Tex. Crim. App. 2010)); *see* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007).

Under this standard, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted, and we treat direct and circumstantial evidence equally. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Starks v. State*, 684 S.W.3d 868, 873 (Tex. App.—Eastland 2024, no pet.). In this regard, it is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish the defendant's guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *Lee v. State*, 676 S.W.3d 912, 915 (Tex. App.—Eastland 2023, no pet.). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, we may not

use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). We consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). But "juries trump both trial and appellate judges on weight-of-evidence determinations." *Evans v. State*, 202 S.W.3d 158, 164 (Tex. Crim. App. 2006) (citing *Jackson*, 443 U.S. at 326).

B. *Applicable Law*

We measure the sufficiency of the evidence by comparing the evidence produced at trial against "the essential elements of the offense as defined by the hypothetically correct jury charge." *Turley v. State*, 691 S.W.3d 612, 617 (Tex. Crim. App. 2024); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Turley*, 691 S.W.3d at 617 (citing *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 244 (Tex. Crim. App. 2019)). "The law authorized by the indictment consists of the statutory elements of the offense as modified by the indictment allegations." *Baltimore*, 689 S.W.3d at 341.

Here, Appellant was charged with Sanchez's murder under two theories: (1) intentionally or knowingly causing Sanchez's death by shooting him with a firearm; and (2) with the intent to cause serious bodily injury to Sanchez, committing an act clearly dangerous to human life by shooting him with a firearm, causing his death. *See* PENAL § 19.02(b)(1), (2). These two methods of committing murder are not separate offenses, but rather are alternative methods of committing the same offense. *See Walter v. State*, 581 S.W.3d 957, 968 (Tex. App.—Eastland 2019, pet.

6

ref'd); *Moreno v. State*, No. 11-22-00235-CR, 2024 WL 2965171, at *4 (Tex. App.—Eastland June 13, 2024, no pet.) (mem. op., not designated for publication).

The trial court's charge additionally allowed Appellant to be convicted either as a primary actor or as a party. *See* PENAL § 7.01(a) (West 2021). "[U]nder the law of parties, the State may enlarge an accused's criminal responsibility to include acts in which he may not be the principal actor." *Boston v. State*, 373 S.W.3d 832, 837 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013); *see Hughitt v. State*, 539 S.W.3d 531, 540 (Tex. App.—Eastland 2018), *aff'd*, 583 S.W.3d 623 (Tex. Crim. App. 2019). A person may be convicted as a party to an offense "if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." PENAL § 7.01(a); *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). A person is criminally responsible for an offense committed by the conduct of another if, with the intent to promote or assist the commission of the offense, the person solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2) (West Supp. 2024). When determining whether a person is a party to an offense, courts "may look to 'events before, during, and after the commission of the offense.'" *Gross*, 380 S.W.3d at 186 (quoting *Wygal v. State*, 555 S.W.2d 465, 468–69 (Tex. Crim. App. 1977)).

Circumstantial evidence is sufficient to prove a defendant's status as a party, but "[t]here must be sufficient evidence of an understanding and common design to commit the offense." *Walter*, 581 S.W.3d at 975–76 (quoting *Gross*, 380 S.W.3d at 186); *see Patterson v. State*, 606 S.W.3d 3, 24 (Tex. App.—Corpus Christi–Edinburg 2020, pet. ref'd) ("Under the law of parties, 'direct evidence' of each element of the offense 'is not required.'" (quoting *Alcala v. State*, 476 S.W.3d 1, 17–18 (Tex. App.—Corpus Christi–Edinburg 2013, pet. ref'd))). "Each fact need not

point directly to the guilt of the defendant, as long as the cumulative effect of the facts [is] sufficient to support the conviction under the law of parties." *Gross*, 380 S.W.3d at 186.

C. *Analysis*

Appellant argues that the "evidence is legally insufficient to support [his] principal or party liability as the shooter" because no one witnessed him carrying or firing a weapon, and he was "not expressly identif[ied] . . . as the man who pulled the trigger at Sanchez." The State maintains that the circumstantial evidence was sufficient to establish Appellant's guilt either as the principal actor or as a party. We agree with the State.

First, we note that it is undisputed that two weapons were involved in the shooting that resulted in Sanchez's death. Officer Thelen unequivocally testified that he witnessed "muzzle flashes" and the distinct sound of two different types of gunfire coming from two males standing separately next to a dark gray Nissan. The firearms examiner testified that projectiles and shell casings recovered from the crime scene came from two different weapons. And the medical examiner concluded that two different types of bullets had been used in the shooting, and it was bullets from a "high velocity rifle" that were believed to have caused Sanchez's lethal injury.

With respect to Appellant's contention that neither he nor Hernandez were the two shooters, we find the argument unavailing. Immediately after the shooting, Officer Thelen witnessed two men get into the Nissan and "fly" out of the parking lot. *See Ingerson v. State*, 559 S.W.3d 501, 510 (Tex. Crim. App. 2018) ("Having the opportunity to murder someone and then fleeing the crime scene is a circumstance of guilt."). The men engaged several law enforcement agencies in a high-speed pursuit before ultimately abandoning the Nissan and attempting to flee

8

on foot. *See id.*; *see also Ranson v. State*, No. 11-16-00111-CR, 2018 WL 2022691, at \*4 (Tex. App.—Eastland Apr. 30, 2018, pet. dism'd) (mem. op., not designated for publication) (concluding circumstances such as running away from the crime scene together after a shooting was evidence that "the jury could further infer an agreement or common purpose to commit murder"). Both men were located and identified shortly thereafter as Hernandez and Appellant. No other individuals were found inside the Nissan that Appellant and Hernandez abandoned that could have partaken in the shooting.

Moreover, a 9-millimeter handgun and an AR-15 rifle were recovered from the front-passenger-seat area of the abandoned Nissan, and the firearms examiner connected the firearms found inside the Nissan to the projectiles and shell casings recovered from the crime scene. *See Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016) (concluding that finding the murder weapon in appellant's possession days after the shooting was evidence of appellant's guilt); *Trejo v. State*, 594 S.W.3d 790, 803 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (concluding the same where the murder weapon was recovered near the scene of appellant's car accident the same evening as the shooting); *see also Torres v. State*, 343 S.W.3d 297, 302 (Tex. App.—Eastland 2011, pet. ref'd) (holding evidence was sufficient to establish that defendant intentionally or knowingly caused victim's death, in part, because the firearms examiner testified that "the shell casing was fired from the chamber of the [recovered firearm]"). Ranger Burney further opined that, based on the location of the shell casings recovered and the known location of the vehicles involved, there were not just two weapons but two shooters. Finally, Appellant's GSR testing results were revealed to have been "consistent with either a person fir[ing] a weapon or being in the immediate proximity of a weapon that is being fired, or came in contact with a surface that had gunshot primer residue." *See*

*Ingerson*, 559 S.W.3d at 510; *see also Marion v. State*, No. 13-23-00199-CR, 2024 WL 1665659, at \*5 (Tex. App.—Corpus Christi–Edinburg Apr. 18, 2024, no pet.) (mem. op., not designated for publication) ("Considering the GSR results together with all the evidence presented at trial, a rational trier of fact could have reasonably concluded that Marion had GSR on his hands because he fired the gun at Tina."); *Parkman v. State*, No. 02-22-00280-CR, 2023 WL 7210160, at \*4 (Tex. App.—Fort Worth Nov. 2, 2023, no pet.) (mem. op., not designated for publication) (considering the fact that the appellant "had particles consistent with GSR on their hands" in its sufficiency analysis).

The combined and cumulative force of the evidence, when viewed in the light most favorable to the verdict, provides a rational basis for the jury's reasonable and necessary inference that Appellant was a shooter. *See Garcia*, 667 S.W.3d at 762; *Hooper*, 214 S.W.3d at 16–17. And irrespective if it was Appellant or Hernandez who took the fatal shot, there is sufficient evidence that, at minimum, Appellant aided or attempted to aid Hernandez in committing the offense and was, therefore, criminally responsible for Hernandez's conduct under the law of parties. *See* PENAL § 7.01; *Gross*, 380 S.W.3d at 186.

Viewed in the light most favorable to the verdict, we conclude that there is sufficient evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that Appellant committed the murder of Sanchez as either a primary actor or as a party. *See Baltimore*, 689 S.W.3d at 341. We overrule Appellant's first issue.

*The Probative Value of the Photograph was Not Outweighed*
*by the Substantially Danger of Unfair Prejudice*

In his second issue, Appellant argues that, pursuant to Rule 403 of the Texas Rules of Evidence, the trial court abused its discretion by admitting an autopsy

photograph depicting an internal view of the fatal injury sustained by Sanchez. *See* TEX. R. EVID. 403.

A. *Standard of Review & Applicable Law*

We review the trial court's admission of evidence under an abuse of discretion standard. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or when it acts arbitrarily or unreasonably. *Id.* at 669 (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim App. 1990)). Therefore, we uphold a trial court's ruling on admissibility if it is within the "zone of reasonable disagreement." *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021) (quoting *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)).

To be admissible, a trial court must first determine that the evidence is relevant. *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016). Relevant evidence is any evidence that has a tendency to make a fact more or less probable than it would be without the evidence that is also of consequence in the action. TEX. R. EVID. 401. Rule 403 provides that relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

"Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002) (citing *Montgomery*, 810 S.W.2d at 376; *see Martin v. State*, 570 S.W.3d 426, 437 (Tex. App.—Eastland 2019, pet. ref'd). In this regard, Rule 403 only protects a criminal defendant against unfair prejudice, not all prejudice. *Ruiz v. State*, 631 S.W.3d 841, 865 (Tex. App.—Eastland 2021, pet. ref'd). "Rule 403 requires exclusion of evidence only when there exists a clear

disparity between the degree of prejudice of the offered evidence and its probative value." *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001). Therefore, in reviewing a trial court's Rule 403 determination, we will reverse the trial court's ruling only if a clear abuse of discretion is shown. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); *Montgomery*, 810 S.W.2d at 392; *Martin*, 570 S.W.3d at 437.

"Texas Rule of Evidence 403 is one of judicial economy." *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024). "[I]n reviewing a trial court's Rule 403 determination, we will reverse the trial court's ruling only if a clear abuse of discretion is shown." *Herrera v. State*, 676 S.W.3d 896, 908 (Tex. App.—Eastland 2023, no pet.); *see Perkins v. State*, 664 S.W.3d 209, 217 (Tex. Crim. App. 2022).

Our analysis under Rule 403 includes, but is not limited to, the consideration of the following factors: "(1) the strength of the evidence's probative value, (2) the potential for the evidence to 'impress the jury in some irrational but nevertheless indelible way,' (3) [t]he amount of time required at trial to develop the evidence, and (4) the proponent's need for the evidence." *Hart*, 688 S.W.3d at 891 (quoting *Montgomery*, 810 S.W.2d at 389–90 (op. on reh'g)); *Gigliobianco v. State,* 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). When, as here, the evidence at issue is a photograph, additional relevant factors include "the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case." *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009); *Carrera v. State*, No. 11-22-00245-CR, 2024 WL 2194613, at *3 (Tex. App.—Eastland May 16, 2024, no pet.) (mem. op., not designated for publication).

B. *Analysis*

The complained-of photograph was admitted through the testimony of Dr. Florez, who performed the autopsy on Sanchez. Dr. Florez noted that although multiple gunshot wounds perforated Sanchez's body, his cause of death was due to the blood loss from left iliac injuries. Dr. Florez explained that the challenged photograph depicted "the only injury that was fatal." Dr. Florez elaborated, "[I]t shows the extent of the damage. Because that part of the bone is a solid piece of bone. So it takes up a lot of force to break that bone, and it also shows the damage to the vessels. That is what caused the patient to bleed out." With this testimony in mind, we proceed with our review of the Rule 403 factors.

1. *Probative Value and State's Need*

The first and last factors focus on the probative force of and the State's need for the evidence. *See Hart*, 688 S.W.3d at 891. "'Probative value' refers to the inherent probative force of an item of evidence—how strongly it serves to make the existence of a fact of consequence more or less probable." *Herrera*, 676 S.W.3d at 909; *see Hart*, 688 S.W.3d at 891. The single autopsy photograph that was challenged by Appellant is probative and is necessary to show the full extent of the injuries Appellant inflicted on Sanchez, specifically, the wound that proved fatal, while acting as an aid for the jury to understand the corresponding autopsy conducted by Dr. Florez. *See Hart*, 688 S.W.3d at 891; *see also Hayes*, 85 S.W.3d at 816 (concluding that autopsy photographs showing entry and exit wounds were relevant to explain the way in which the victim was killed); *Chavez v. State*, No. 08-16-00084-CR, 2018 WL 2715219, at *9 (Tex. App.—El Paso June 6, 2018, pet. ref'd) (mem. op., not designated for publication) (concluding same where evidence was photograph of the victim's brain after the medical examiner had removed the top of her skull because it showed evidence of internal injuries not otherwise visible

externally and was "helpful to the jury in understanding [the medical examiner's] explanation of the injuries [the victim] sustained"). These factors weigh in favor of admission.

2. *Prejudicial Dangers*

The second factor focuses on "whether the evidence has a 'tendency to suggest decision on an improper basis,' usually emotional in nature." *Hart*, 688 S.W.3d at 894 (quoting *Valadez v. State*, 663 S.W.3d 133, 142 (Tex. Crim. App. 2022)). The autopsy photograph was a close-up, color image of Sanchez's internal injuries; however, the nature of the photograph is weighed against the fact that it demonstrates that the injuries were the result of Appellant's use of a deadly weapon. That one of the bullet fragments severed a bone in the back and a blood vessel that resulted in death—not just injury— and that the cause of death was not coincidentally the result of other enigmatic cause is highly probative. *See Hayes*, 85 S.W.3d at 816 ("Changes rendered by the autopsy process are of minor significance if the disturbing nature of the photograph is primarily due to the injuries caused by the appellant."); *see also Lopez v. State*, 582 S.W.3d 377, 397 (Tex. App.—San Antonio 2018, pet. ref'd) ("[T]he one photograph depicting Delfino's skin removed, revealing internal injuries . . . was 'admissible and highly probative.'"); *Simonton v. State*, No. 14-23-00362-CR, 2024 WL 3948218, at *11 (Tex. App.—Houston [14th Dist.] Aug. 27, 2024, pet. ref'd) (mem. op., not designated for publication) (concluding that trial court did not err in admitting photograph of a medical container filled with a substance identified as Complainant's blood because the "photograph also was the only exhibit admitted to show the extent of the bleeding caused by Complainant's injuries"); *Carter v. State*, No. 11-17-00264-CR, 2019 WL 4316812, at *2–3 (Tex. App.—Eastland Sept. 12, 2019, no pet.) (mem. op., not designated for publication) (concluding the same where photographs had been admitted, depicting

a close-up of the inside of the victim's skull showing damage caused by the alleged weapon after the victim's brain and eyes had already been removed, reasoning "a trial court does not abuse its discretion by admitting such photographs when it would otherwise be difficult to show a victim's injury without altering the body in some way). This factor weighs in favor of admission.

### 3. *Time Needed to Develop the Evidence*

The third factor concerns the amount of "trial time dedicated to the development of the evidence such that its introduction caused undue delay." *Hart*, 688 S.W.3d at 893. Because the concern is the extent to which the jury is distracted from considering the charged offense, the time needed to develop the evidence "necessarily includes any testimony introduced regarding the evidence, including cross-examination, redirect examination, and any rebuttal offered by the defense in response to the evidence." *Id.* The record reflects that the time needed to develop the evidence through Dr. Florez was relatively minimal. The State presented eighteen witnesses over the course of three days. The complained-of autopsy photograph constituted but one of almost 200 photograph exhibits proffered by the State and approximately two pages of Dr. Florez's eighteen pages of testimony. *See Luna v. State*, 687 S.W.3d 79, 99 (Tex. App.—Eastland 2024, pet. ref'd) (concluding that the complained-of testimony, which consisted of twenty-two pages out of the State's 180-page case-in-chief, was "only a small portion of trial" and could "hardly be deemed to be excessive"); *see also Claudio v. State*, No. 11-22-00141-CR, 2023 WL 4629037, at *5 (Tex. App.—Eastland July 20, 2023, no pet.) (mem. op., not designated for publication) (concluding the same where the amount of time that was dedicated to offer and admit the photographs only spanned two and one-half pages of the record). This factor weighs in favor of admission.

#### 4. *Balancing the Factors*

We have considered all the aforementioned factors and conclude that the factors weigh in favor of the admission of the photograph. *See Hart*, 688 S.W.3d at 891; *Gigliobianco*, 210 S.W.3d at 641–42. The photograph, though prejudicial, was neither unfairly prejudicial nor lacking in probative value. *See Luna*, 687 S.W.3d at 104 ("Rule 403 is concerned not with prejudicial evidence, but with evidence that is *unfairly* prejudicial."). The single photograph did not serve to distract the jury or suggest a decision on an improper basis, and the time taken to admit and discuss the photograph was not inordinate. *See Hart*, 688 S.W.3d at 891. Thus, the trial court did not abuse its discretion in admitting evidence of the autopsy photograph under Rule 403. *See Herrera*, 676 S.W.3d at 908; *see, e.g.*, *Callaway v. State*, 546 S.W.3d 899, 910–12 (Tex. App.—Amarillo 2018, pet. ref'd) (concluding trial court did not abuse its discretion in two admitted autopsy photographs showing internal damage caused by the appellant's bullet). We overrule Appellant's second issue.

### *This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS
JUSTICE


April 17, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.