**Opinion filed August 14, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00065-CR

_____

## SERGIO ANTONIO CERNA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR57354**

## M E M O R A N D U M   O P I N I O N

A jury convicted Appellant, Sergio Antonio Cerna, of the first-degree felony offense of murder and the second-degree felony offense of tampering with physical evidence, namely a human corpse. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1), (c), 37.09(c), (d)(1) (West Supp. 2024). Appellant pleaded "true" to two enhancement

allegations, and the jury assessed his punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice for both counts. The trial court sentenced Appellant accordingly.

In four issues on appeal, Appellant asserts that (1) the evidence is insufficient to support the convictions; (2) the trial court abused its discretion in admitting photographs of the victim; (3) the trial court abused its discretion in excluding testimony concerning Appellant's responses to the *Miranda*[1] warnings; and (4) the trial court abused its discretion in admitting statements made by Appellant during his interrogation after Appellant invoked his right to remain silent. We affirm.

## I. *Background*

On November 2, 2021, Julio Lucio-Estrada was driving down a farm road when he spotted a fire on a residential lot and then pulled over to help. Lucio-Estrada testified that as he walked toward the fire, he smelled "burnt me[a]t" and saw what he believed to be a doll or mannequin. But upon closer inspection, Lucio-Estrada recognized a human face and called 9-1-1. Dispatch received the call at 5:47 p.m.

According to Midland County Sheriff's Office Deputy Jayden Perkins, the body was found near an abandoned structure; he estimated that the crime scene was located twenty to thirty feet from the roadway. After the fire had been extinguished, responding officers found a phone charger cord wrapped around the victim's torso and fabric covering the victim's mouth and nose. Midland County Fire Marshal Justin Bunch opined that an accelerant had likely been poured onto the victim's body based on the severity of the victim's burn injuries and the lack of burnt vegetation around the body despite being surrounded by tall grass. David Spence, a trace

---

[1]*See Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966).

2

evidence examiner with the Southwestern Institute of Forensic Sciences in Dallas, tested the victim's clothing, debris from under the body, and debris from the body bag. Spence found gasoline on the victim's clothing, but no ignitable liquid residues were detected from the other collected items.

Using fingerprint testing, followed by DNA confirmation, the body was identified as Saffire Armenta. Investigators thereafter searched Armenta's RV and found blood on her bed sheets. The blood was determined to be a mixture of two individuals: Armenta and Appellant, who was listed as the possible contributor to the DNA profile. Appellant's DNA was not found on any other tested items recovered from either the crime scene or Armenta's RV.

Tasha Zemrus, Deputy Chief Medical Examiner for the Tarrant County Medical Examiner's Office in Fort Worth, testified to the contents of Armenta's autopsy report and corresponding photographs. Dr. Zemrus noted extensive thermal injuries throughout Armenta's body—specifically, the absence of skin and underlying soft tissue. Armenta's body had also sustained multiple thermal fractures and thermal injuries to her organs. Dr. Zemrus testified that Armenta had tetrahydrocannabinol (marihuana) and methamphetamine in her system. Dr. Zemrus also testified that a low level of alcohol was present, which could be from the victim's ingestion or could have occurred postmortem. When questioned about the possibility of a methamphetamine overdose, Dr. Zemrus could neither rule it out as a possible cause of death nor conclude that there was enough medical evidence to find that an overdose had occurred. Dr. Zemrus explained, "One of the problems with . . . stimulant drugs, like methamphetamine or cocaine, is that even low levels can potentially be lethal." Dr. Zemrus further stated that, although there was no apparent blunt force trauma to Armenta's body, Armenta's extensive burn injuries

3

rendered it difficult to rule out the possibility of blunt force trauma or strangulation. Dr. Zemrus was unable to ascertain whether Armenta was already deceased at the time her body was set on fire. Moreover, although the autopsy report stated that the circumstances surrounding how Armenta was found were "highly suspicious for a homicidal manner of death," Armenta's cause of death was declared "undetermined."

Nearly one week after Armenta's body was found, officers executed an arrest warrant for Appellant and obtained consent to search his phone. Appellant's phone records were admitted into evidence. Text messages between Appellant and Armenta in the days leading up to Armenta's death depicted a once romantic relationship that had become increasingly volatile and threatening. The following are text messages exchanged between Appellant and Armenta on the day of the murder:[2]

| Time | Initiated | Received | Text Message |
| --- | --- | --- | --- |
| 1:52:51 | Appellant | Armenta | Come over now b---h ill show u how to keep your man happy |
| 1:53:18 | Appellant | Armenta | Im at your. Rv |
| 3:45:52 | Armenta | Appellant | You left me in the front yard remember for me sleeping at truck stops freeing a-s off |
| 3:49:46 | Appellant | Armenta | U knew what the f--k u were doing I just hope it was worth your Because u got me and |

[2]Typographical errors are original to the texts.

| | | | |
|---|---|---|---|
| | | | ill get your a-s sooner before later.ill see u soon |
| 3:51:38 | Appellant | Armenta | When the f--k are u coming to your trailor this fool wants to know when u are going to give him a payment if not so he can put it up for sale again |
| 3:54:15 | Armenta | Appellant | Take care remember you left me |
| 3:54:45 | Armenta | Appellant | Sitting in the front after I told you not to do there disrespecting me |
| 3:55:46 | Armenta | Appellant | I'm going back to sleep I'm at the Sandhills asleep bc my man left me |
| 3:56:39 | Appellant | Armenta | B---h yes i did what i did but u want to end it like this ?just know ill be looking for your stupid a-s .to burn u in your favorite. Car |
| 3:58:30 | Appellant | Armenta | Sand hills yeah ill find u don't worry lieing a-s b---h u better hide your ride just as u are hideing your dumb ass. |
| 3:59:24 | Appellant | Armenta | Get your nympho a-s back to sleep s--t |
| 4:00:32 | Appellant | Armenta | Just the way u were here we are just chillin want to join fucken d--e a-s b---h |
| 4:00:33 | Armenta | Appellant | Okay Sergio remember you did this you hurt me |

| | | | |
|---|---|---|---|
| 4:01:11 | Armenta | Appellant | You cheated and broke my heart you made me cry but remember you don't car |
| 4:01:42 | Armenta | Appellant | Exactly you have another b---h at my place still disrespecting |
| 4:03:24 | Appellant | Armenta | Im going to do more than just hurt u .no one has taught u a lesson for f-----g people over or burning people u made your bed now you lye on it. |
| 4:04:44 | Armenta | Appellant | Oh well you should have never cheated on me like you say you make your own bed so go lay on it I wont be hiding trust |
| 4:05:11 | Armenta | Appellant | You asked for this |
| 4:05:25 | Appellant | Armenta | She is waiting for u is what she said we are just chilling and working up heat |
| 4:06:23 | Armenta | Appellant | Exactly go with her b---h let her take care of you keep going the more you will never see me again or get anything back |
| 4:06:44 | Appellant | Armenta | Id u are not hiding then come on thru and get whats coming too u . |
| 4:07:01 | Armenta | Appellant | I'm changing my number again wish it didn't end like this remember you choose her |

| | | | |
|---|---|---|---|
| 4:07:35 | Armenta | Appellant | Nah I'll wake away with everything like a g and forget about you the way you forgot about me and cheated |
| 4:07:56 | Armenta | Appellant | You should have never cheated and use the excuse that I accused you |
| 4:08:15 | Armenta | Appellant | Well now you choose her and lost everything |
| 4:09:00 | Appellant | Armenta | Scary a-s b---h runs all that mouth just as u s--k d--k b---h and nothing but a snitching a-s s--t. Quit texting me now I done said what I had to say |
| 4:09:24 | Armenta | Appellant | Goodbye[3] |
| 7:56:58 | Appellant | Armenta | So what do we do to thieves ? Put them out the. Game. |
| 7:57:09 | Armenta | Appellant | So I left with my car bc you left me alone in the front |
| 7:57:17 | Armenta | Appellant | So no never stolid it |

---

[3]Omitted text messages here contain Armenta's repeated threats to call the police and accusations of infidelity. In the early morning hours of November 2, 2021, the Ector County Sheriff's Department received a call from a woman who identified herself as Alexis Armenta. The woman requested police intervene between her and her ex-boyfriend but then clarified she had already left the area but asked that police evict him and his new girlfriend out of her residence. An officer was dispatched to the residence sometime between 4:14 and 4:22 a.m. However, attempts to locate the caller were unsuccessful. Armenta's mother testified that Alexis is Armenta's sister and identified Armenta as the caller.

| | | | |
|---|---|---|---|
| 7:57:45 | Armenta | Appellant | Nah bc actually your ppl now want me to work for them |
| 7:57:51 | Armenta | Appellant | So thanks for putting me on |
| 7:58:15 | Armenta | Appellant | Bc they see you sh-------s n lies |
| 8:00:13 | Armenta | Appellant | They see all lies and bs you about that's y they gave me the key to my new rv |
| 8:00:27 | Appellant | Armenta | Say what ever u want u still have t the s--t that was never supposed to be in your hating a-s b---h. Thank u u think that its all part of the roll to make u think u are all good then once u are where u are wanted then whats when u will be planted in the ground snitch |
| 8:03:32 | Armenta | Appellant | I told gustavo yes I called the cops bc you had a b---h at my house |
| 8:05:01 | Armenta | Appellant | N she was never supposed to be there |
| 8:05:19 | Armenta | Appellant | He said now he understand n everything clean |
| 8:07:44 | Armenta | Appellant | You think what you want |
| 8:08:04 | Armenta | Appellant | I'm telling you you think these ppl cool with you but they ain't smh |

| | | | |
|---|---|---|---|
| 8:10:16 | Armenta | Appellant | Watch your truck bc they said that b---h going to do you very wrong with that truck |
| 8:19:37 | Appellant | Armenta | I have to watch u b---h you are trash a-s b---h that don't know what the f--k until the job is done |
| 8:20:23 | Armenta | Appellant | Look so you had ppl paid to take me out[4] |
| 8:25:25 | Appellant | Armenta | No u taking your self out cause u stole the s--t that I left in there and there are no excuses on the reason why u called the cops also u let them hoes in . there is no explanation for it i knew all along u were a snitch i was just playing the part to be able to work just like moco just helped him out to keep his a-s from snitching. And still with that he is still singing like a bird .que triste con una p--a como tu . waste of a b---h |
| 8:30:04 | Appellant | Armenta | B---h the way I handle u do u think I am going to pay someone to do my dirt lol. There is nothing more to me to see u plead for your fingers and for your life . just like an example for the rest . so turn in all this s--t in that way when the issue is taken care of they can know why it happened for u playing the game by being a snitch |

---

[4]This is the last known text message from Armenta.

At 8:32 a.m., Appellant texted an individual listed under his phone as "Lopez Homboy Roger," stating: "So if she goes there keep her b---h a-s there don't let her leave cause I am going to take care of my light weight." Appellant had previously texted the same number earlier in the morning, stating, "She took my s--t when I got off the car so now she is trying to snitch to get back at me."

At 8:37 a.m., Appellant recorded a video of himself inside a vehicle with music playing in the background. The video recording and lyrics were admitted into evidence.[5]

There was no communication between Appellant and anyone else between 8:32 a.m. and 10:41 a.m. Appellant then sent the subsequent texts messages to Armenta—all of which went unanswered:

| Time | Initiated | Received | Text Message |
|---|---|---|---|
| 10:49:50 | Appellant | Armenta | Uf------n lieing a-s b---h no one told u s--t about keeping the jale so if u don't want whats coming to u. Better leave it at the trailor or when u know you are being f----d with your car is going to be burned down then you will be next |

---

[5]The lyrics are as follows:

For the hater who be talking loud and running his lips
Trying to diss, he better lay low.
For the b---h that said I shot some s--t up out of my d--k
Now she sick, she better lay low.
For the busta who be riding my hood
And really aint' from my gang, better lay low.
I hope he don't be thinking I'm just talking
And I won't do a thang [sic], really hope so.
Law low, nobody move until I say so.

| | | | |
|---|---|---|---|
| 10:51:08 | Appellant | Armenta | Make the right choice don't be a dope w---e. Where the f--k are u |
| 10:52:50 | Appellant | Armenta | I need my s--t as well b---h a-s t---k |
| 1:21:11 | Appellant | Armenta | Now u want to act stupid do what u do the more money I pass the more money its goi to cost u to replace what has been lost continue not to answer scary A-s b---h I knew everything u said has been all show cause u cought that p---y this morning that's why u called the cops b---h . |

There was no cell phone activity from Appellant's phone between 4:17 p.m. and 6:57 p.m. Appellant then sent two more text messages to Armenta later that same evening before ceasing all contact with Armenta until November 7, 2021. At approximately 4:36 p.m. on November 7, 2021, Appellant texted Armenta: "U still going to act all shady. Come out and play! Everyone is worried about u cause they haven't seen or heard from u." Four minutes later, Appellant texted: "U should have just left with that fool u are with u didn't have to hide s--t and take the mech work. He said that I have to start paying on that s--t so u going to Hook me up or u going to make me do something stupid over it. dont cause that s--t its not u that im trippin on its about that s--t."

The State offered a two-page transcript from Appellant's post-arrest interview with law enforcement, which was admitted into evidence, wherein Appellant stated that he had been trying to get his drugs back from Armenta and he believed that if he were unsuccessful, his drug dealer would kill him. In the transcript, Appellant

stated that "[his] texts to [Armenta] were just texts to scare her and make her return what she took," and that "[Armenta was] jeopardizing [his] life. That's why [he] was threatening her and telling her to come back and bring back what she took."

## II. *Sufficiency of the Evidence*

Appellant argues in his first issue that the evidence is insufficient to support his convictions for murder and tampering with evidence. Specifically, Appellant contends that the State failed to prove that Armenta was murdered or that he tampered with her corpse.

### A. *Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). In reviewing the sufficiency of the evidence to support a conviction, we must "consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found that the State has proven the essential elements of the crime beyond a reasonable doubt." *Baltimore v. State*, 689 S.W.3d 331, 341 (Tex. Crim. App. 2024) (citing *Jackson*, 443 U.S. at 319). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021) (quoting *Jackson*, 443 U.S. at 319).

Therefore, "[i]f the record supports conflicting inferences, the reviewing court must 'presume that the factfinder resolved the conflicts in favor of the prosecution'

12

and defer to the jury's factual determinations." *Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023) (quoting *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)). "[A] reviewing court does not sit as the thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence." *Id.* (quoting *Isassi v. State*, 330 S.W.3d 663, 638 (Tex. Crim. App. 2010)); *see* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007).

Under this standard, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted, and we treat direct and circumstantial evidence equally. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Starks v. State*, 684 S.W.3d 868, 873 (Tex. App.—Eastland 2024, no pet.). In this regard, it is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish the defendant's guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *Lee v. State*, 676 S.W.3d 912, 915 (Tex. App.—Eastland 2023, no pet.). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, we may not use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). We consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). But "juries trump both trial and appellate judges on weight-of-evidence determinations." *Evans v. State*, 202 S.W.3d 158, 164 (Tex. Crim. App. 2006) (citing *Jackson*, 443 U.S. at 326).

B. *Applicable Law*

We measure the sufficiency of the evidence by comparing the evidence produced at trial against the essential elements of the offense as defined by the "hypothetically correct jury charge." *Garcia*, 667 S.W.3d at 762 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 244 (Tex. Crim. App. 2019)). "The law authorized by the indictment consists of the statutory elements of the offense as modified by the indictment allegations." *Baltimore*, 689 S.W.3d at 341.

Here, Appellant was charged with intentionally or knowingly causing Armenta's death by a manner and means unknown. *See* PENAL § 19.02(b)(1). Appellant was additionally charged with tampering with a human corpse. A person commits the offense of tampering with a human corpse if, "knowing that an offense has been committed, [the person] alters, destroys, or conceals [a human corpse] . . . with intent to impair its . . . availability as evidence in any subsequent investigation of or official proceeding related to the offense." *Id.* § 37.09(d)(1). "This statute requires proof of three elements: the defendant (1) knew an offense was committed; (2) concealed, altered, or destroyed a thing; and (3) intended to impair the availability of that thing as evidence in any subsequent investigation or official proceeding related to the offense." *Barron v. State*, 629 S.W.3d 557, 563 (Tex. App.—Eastland 2021, pet. ref'd) (citing *Stahmann v. State*, 602 S.W.3d 573, 576 (Tex. Crim. App. 2020)).

14

When a case involves an extrajudicial confession, we assess the sufficiency of the corroborating evidence under the common law corpus delicti rule. *Shumway v. State*, 663 S.W.3d 69, 75 (Tex. Crim. App. 2022); *Miranda v. State*, 620 S.W.3d 923, 928–29) (Tex. Crim. App. 2021). The corpus delicti rule requires "corroborating evidence independent of that confession showing that the essential nature of the offense was committed." *Shumway*, 663 S.W.3d at 75; *Bollinger v. State*, 224 S.W.3d 768, 778 (Tex. App.—Eastland 2007, pet. ref'd); *Castillo v. State*, No. 11-23-00180-CR, 2024 WL 4229740, at *5 (Tex. App.—Eastland Sept. 19, 2024, no pet.) (mem. op., not designated for publication). "The corroborating evidence need not prove that the crime was committed; it 'need only make this conclusion more probable.'" *Miranda*, 620 S.W.3d at 928 (quoting *Williams v. State*, 958 S.W.2d 186, 190 (Tex. Crim. App. 1997)). The corpus delicti of a particular crime does not require proof that the specific defendant committed the criminal act, however, just that the crime itself occurred. *Shumway*, 663 S.W.3d at 75; *Chambliss v. State*, No. 11-21-00046-CR, 2023 WL 2415314, at *6 (Tex. App.—Eastland Mar. 9, 2023, pet. ref'd) (mem. op., not designated for publication). "We consider all the admitted evidence except the extrajudicial confession and view it in the light most favorable to the verdict." *Miranda*, 620 S.W.3d at 929–30.

C. *Analysis*

The crux of Appellant's argument concerns whether the State proved that Armenta was, in fact, murdered. With respect to the tampering conviction, Appellant generally argues there was no evidence tying Appellant to the commission of the offense.

Contrary to Appellant's contention on appeal, an undetermined cause of death does not render evidence insufficient to support a conviction for murder.

Recognizing the difficulty in establishing guilt in cases where pivotal pieces of evidence, such as the victim's body or a murder weapon, are never recovered, the Texas Court of Criminal Appeals in *Nisbett* held that while "[e]vidence of how a victim died would likely be helpful" in proving the elements of murder, "it need not necessarily be known what caused the victim's death." *Nisbett v. State*, 552 S.W.3d 244, 264 (Tex. Crim. App. 2018) ("The notion that the careful and meticulous murderer might escape punishment by destroying or forever concealing the body of his victim is a distasteful one, and the murderer's successful disposition of the victim's remains should not be rewarded.") (internal quotation marks omitted). This is because "murder is a result-of-conduct crime," and therefore "[w]hat caused the victim's death is not the focus or gravamen of the offense; the focus or gravamen of the offense is that the victim was killed." *Johnson v. State*, 364 S.W.3d 292, 298 (Tex. Crim. App. 2012) (citing *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011)). Consequently, "'the cumulative force of all the incriminating circumstances' can support a murder conviction even if 'the evidence did not prove the method of commission of the offense.'" *Nisbett*, 552 S.W.3d at 264 (quoting *Ramos v. State*, 407 S.W.3d 265, 271 (Tex. Crim. App. 2013)); *see also Garcia v. State*, 486 S.W.3d 602, 610 (Tex. App.—San Antonio 2015, pet. ref'd) ("The case law is well-settled; a jury need not agree on either the manner or the means that caused the death of the individual.").

The extensiveness of Armenta's "thermal injuries" rendered the medical examiner unable to reach a definitive cause of death, but the state in which Armenta's body was recovered as well as Appellant's behavior before and after her death are circumstantial evidence that her death was caused intentionally or knowingly, consistent with Section 19.02(b)(1) of the Penal Code. *See Nisbett*, 552

S.W.3d at 265. Armenta's body was found off of a Farm to Market Road near an abandoned structure, in a tall, grassy area. Fabric had been placed over her mouth and nose, and a cord was wrapped around her body. Gasoline had been poured on her clothing. Blood was later discovered at Armenta's residence and determined to possess DNA from a mixture of two individuals: Armenta with Appellant listed as the possible contributor to the DNA profile.

In the hours leading up to Armenta's death, Appellant messaged Armenta, notifying her that he was looking for her and threatening to "do more than just hurt [her]." The following are text messages that Appellant sent Armenta in which Appellant threatened to burn her and "plant[]" her in the ground:

- B---h yes i did what i did but u want to end it like this ?just know ill be looking for your stupid a-s .to burn u in your favorite. Car.

- Sand hills yeah ill find u don't worry lieing a-s b---h u better hide your ride just as u are hideing your dumb a-s.

- So what do we do to thieves ? Put them out the. Game.

- Say what ever u want u still have t the s--t that was never supposed to be in your hating a-s b---h. Thank u u think that its all part of the roll to make u think u are all good then once u are where u are wanted then thats when u will be planted in the ground snitch

- B---h the way I handle u do u think I am going to pay someone to do my dirt lol. There is nothing more to me to see u plead for your fingers and for your life . just like an example for the rest .

- Uf----n lieing a-s b---h no one told u s--t about keeping the jale so if u don't want whats coming to u. Better leave it at the trailor or when u know you are being f----d with your car is going to be burned down then you will be next

17

Appellant also instructed another individual to "keep" Armenta should she appear at their residence so Appellant could "take care" of her. *See id.* at 267–68; *see also Williams v. State*, No. 10-08-00401-CR, 2011 WL 455198, at *4 (Tex. App.—Waco Feb. 9, 2011, no pet.) (mem. op., not designated for publication) (affirming conviction based on the appellant's conduct toward the victim before her death; the appellant challenged the sufficiency of the evidence because the victim's cause of death was unknown). Moreover, the jury was free to disbelieve Appellant's post-arrest statements implying that he had not intended to act on his threats to Armenta. *See Barron v. State*, 630 S.W.3d 392, 405 (Tex. App.—Eastland 2021, pet. ref'd); *see also Hernandez v. State*, No. 11-22-00318-CR, 2024 WL 628914, at *5 (Tex. App.—Eastland Feb. 15, 2024, pet. ref'd) (mem. op., not designated for publication) ("[I]n light of [a]ppellant's inconsistent statements and suspicious actions and conduct, the jury was entitled to reject and disbelieve all or a portion of [a]ppellant's version of events.").

Opportunity, when coupled with motive, is indicative of guilt. *Nisbett*, 552 S.W.3d at 265. Although no murder weapon or implements in Appellant's possession were found—the circumstantial evidence, namely, Appellant and Armenta's troubled relationship and Appellant's repeated threats of violence, particularly references to the coincidental mode of death—support the jury's findings that Appellant murdered Armenta and tampered with her corpse to cover up the murder. *See id.*; *see also Garza v. State*, No. 13-22-00599-CR, 2024 WL 4986401, at *6 (Tex. App.—Corpus Christi–Edinburg Dec. 5, 2024, pet. ref'd) (mem. op., not designated for publication) (affirming appellant's conviction "notwithstanding a lack of evidence establishing the precise method of commission of the offense" because the evidence showed that he had the opportunity to inflict

18

the victim's injuries and had previously abused the victim); *Milleni v. State*, No. 01-22-00910-CR, 2024 WL 2820130, at *8 (Tex. App.—Houston [1st Dist.] June 4, 2024, pet. ref'd) (mem. op., not designated for publication) (affirming appellant's conviction where there was a lack of direct, physical evidence, the appellant never confessed, and a murder weapon was never recovered because circumstantial evidence of the couple's troubled relationship and history of abuse); *Smith v. State*, No. 06-22-00052-CR, 2023 WL 2484869, at *6 (Tex. App.—Texarkana Mar. 14, 2023, pet. ref'd) (mem. op., not designated for publication) (affirming appellant's capital murder conviction for committing murder in the course of committing arson where the appellant made prior threats to burn the victim's home down).

Viewing the evidence in the light most favorable to the verdict, we conclude that sufficient evidence exists from which a rational trier of fact could have logically inferred and found beyond a reasonable doubt that Appellant committed Armenta's murder and thereafter tampered with the corpse with the intent to impair the availability of the corpse as evidence. We overrule Appellant's first issue.

### III. *Admission of Photographs of the Victim*

In his second issue, Appellant contends that the trial court improperly admitted thirteen photographs of the victim under Rule 403.[6] *See* TEX. R. EVID. 403.

### A. *Standard of Review and Applicable Law*

We review the trial court's admission of evidence under an abuse of discretion standard. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or when it acts arbitrarily or unreasonably. *Id.* at 669 (citing

---

[6]Appellant objected under Rule 403 at trial. Although Appellant does not mention Rule 403 in his appellate brief, the State interprets Appellant's challenge as one under Rule 403—as do we.

19

*Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim App. 1990)). Therefore, we uphold a trial court's ruling on admissibility if it is within the "zone of reasonable disagreement." *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021) (quoting *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)).

"Texas Rule of Evidence 403 is one of judicial economy." *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024). Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002) (citing *Montgomery*, 810 S.W.2d at 376); *see Martin v. State*, 570 S.W.3d 426, 437 (Tex. App.—Eastland 2019, pet. ref'd). In this regard, Rule 403 only protects a criminal defendant against unfair prejudice, not all prejudice. *Ruiz v. State*, 631 S.W.3d 841, 865 (Tex. App.—Eastland 2021, pet. ref'd). "Rule 403 requires exclusion of evidence only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001). Therefore, in reviewing a trial court's Rule 403 determination, we will reverse the trial court's ruling only if a clear abuse of discretion is shown. *Herrera v. State*, 676 S.W.3d 896, 908 (Tex. App.—Eastland 2023, no pet.); *see Perkins v. State*, 664 S.W.3d 209, 217 (Tex. Crim. App. 2022).

Our analysis under Rule 403 includes, but is not limited to, the consideration of the following factors: "(1) the strength of the evidence's probative value, (2) the potential for the evidence to 'impress the jury in some irrational but nevertheless indelible way,' (3) [t]he amount of time required at trial to develop the evidence, and

(4) the proponent's need for the evidence." *Hart*, 688 S.W.3d at 891 (quoting *Montgomery*, 810 S.W.2d at 389–90 (op. on reh'g)); *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). When, as here, the evidence at issue is a photograph, additional relevant factors include "the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case." *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009); *Carrera v. State*, No. 11-22-00245-CR, 2024 WL 2194613, at *3 (Tex. App.—Eastland May 16, 2024, no pet.) (mem. op., not designated for publication).

B. *Exhibits at Issue*

Appellant challenges thirteen exhibits on appeal. Photographs appear in black and white in the record. Because the quality of the photographs is poor, several descriptions are based entirely on witness testimony.

1. Exhibit No. 15: Armenta, surrounded by brush, on fire from several yards away.

2. Exhibit No. 16: close-up of Exhibit No. 15.

3. Exhibit No. 94: close-up of Armenta's charred hand.

4. Exhibit No. 104: close-up of Armenta's left foot showing "a bit of lividity" with "hardly any burn damage."

5. Exhibit No. 107: close-up of fabric taken from Armenta's head that had been covering her mouth.

6. Exhibit No. 113: close-up of Armenta's face once fabric was removed.

7. Exhibit No. 118: Armenta's body being turned onto the side so that her backside and a USB-C cord wrapped around her torso are visible.

8. Exhibit No. 129: close-up of the USB-C cord that was wrapped around Armenta.

21

9. Exhibit No. 140:[7] ground underneath Armenta after her body was removed.

10. Exhibit No. 165: autopsy photograph of Armenta's head, showing pink foam around her mouth.

11. Exhibit No. 170: autopsy photograph of Armenta's lung, indicating fire exposure.

12. Exhibit No. 200: autopsy photograph of Armenta's lower body.

13. Exhibit No. 201: autopsy photograph of Armenta's upper body depicting "very deep burns."

For purposes of our analysis, we collectively refer to Exhibit Nos. 15, 16, 94, 107, 113, 118, and 129 as "crime scene photographs" and Exhibit Nos. 165, 170, 200, and 201 as "autopsy photographs."

### 1. *Probative Value and State's Need*

The first and last factors focus on the probative force of and the State's need for the evidence. *See Hart*, 688 S.W.3d at 891. "'Probative value' refers to the inherent probative force of an item of evidence—how strongly it serves to make the existence of a fact of consequence more or less probable." *Herrera*, 676 S.W.3d at 909; *see Hart*, 688 S.W.3d at 891.

The crime scene photographs portray Armenta's body in the state that it was in at the time of the officers' arrival as well as shortly after the fire was extinguished. Appellant's first argument was that the evidence of a murder was insufficient, but the photographs additionally provide evidence of a nonaccidental death—i.e.,

---

[7]No objection was asserted as to this exhibit at trial so any appellate challenge to the admission of this evidence has been waived. *See* TEX. R. APP. P. 33.1; *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) ("Under Texas law, 'if, on appeal, a defendant claims the trial judge erred in admitting evidence offered by the State, this error must have been preserved by a proper objection and a ruling on that objection.'" (quoting *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991))).

photographs of the fabric found covering Armenta's mouth and nose and of the cord found wrapped around her body.

Meanwhile, the four autopsy photographs, taken against a light backdrop, provide a clearer view of Armenta's injuries. The autopsy photographs also act as an aid for the jury to understand the bases and context of the autopsy conducted, the meaning of the results and the difficulty presented in determining the precise cause of death. *See Hart*, 688 S.W.3d at 891; *see also Mathews v. State,* No. 05-19-00847-CR, 2020 WL 7332676, at *5 (Tex. App.—Dallas Dec. 14, 2020, pet. ref'd) (mem. op., not designated for publication) (concluding that the photographs, although gruesome, were probative to show the nature of the crime and explain why the medical examiner could not determine the cause of death); *Henderson v. State*, No. 10-12-00211-CR, 2013 WL 5290120, at *6 (Tex. App.—Waco Sept. 19, 2013, pet. ref'd) (mem. op., not designated for publication) (concluding photographs of the deceased victim had significant probative value as they supported testimony regarding the difficulty in determining the victim's cause of death due to the decomposition of the victim's body). Dr. Zemrus specifically testified that the photograph of Armenta's lungs illustrated the thermal injuries sustained, and the close-up photograph of Armenta's mouth was significant in that it was a "possible indication of fluid buildup in the lungs due to a fire." *See Hart*, 688 S.W.3d at 891; *Chavez v. State*, No. 08-16-00084-CR, 2018 WL 2715219, at *9 (Tex. App.—El Paso June 6, 2018, pet. ref'd) (not designated for publication) (concluding evidence admissible where evidence was photograph of the victim's brain after the medical examiner had removed the top of her skull because it showed evidence of internal injuries not otherwise visible externally and was "helpful to the jury in

23

understanding [the medical examiner's] explanation of the injuries [the victim] sustained").

All photographs challenged by Appellant are probative and necessary to show the full extent of the injuries sustained by Armenta and the cause of her death. These factors weigh in favor of admission.

### 2. *Prejudicial Dangers*

The second factor focuses on "whether the evidence has a 'tendency to suggest decision on an improper basis,' usually emotional in nature." *Hart*, 688 S.W.3d at 894 (quoting *Valadez v. State*, 663 S.W.3d 133, 142 (Tex. Crim. App. 2022)). The nature of the crime scene and autopsy photographs of explicit content must be weighed against the fact that they demonstrate injuries and death resulting from Appellant's actions. *See Hayes*, 85 S.W.3d at 816 ("Changes rendered by the autopsy process are of minor significance if the disturbing nature of the photograph is primarily due to the injuries caused by the appellant."); *see also Trevino v. State*, No. 08-23-00111-CR, 2024 WL 339117, at *4 (Tex. App.—El Paso Jan. 29, 2024, no pet.) (mem. op., not designated for publication) (noting that while photographs of the victim's burn injuries and disfigurement were "difficult to look at, they show no more than the damage inflicted by [a]ppellant"). This factor weighs in favor of admission.

### 3. *Time Needed to Develop the Evidence*

The third factor concerns the amount of "trial time . . . dedicated to the development of the evidence such that its introduction caused undue delay." *Hart*, 688 S.W.3d at 893. Because the concern is the extent to which the jury is distracted from considering the charged offense, the time needed to develop the evidence "necessarily includes any testimony introduced regarding the evidence, including

cross-examination, redirect examination, and any rebuttal offered by the defense in response to the evidence." *Id.*

The State presented twenty-three witnesses over the course of three days. The complained-of photographs were but thirteen exhibits out of almost 200 exhibits proffered by the State and consisted of approximately sixteen pages of over 1,000 pages of testimony. *See Luna v. State*, 687 S.W.3d 79, 99 (Tex. App.—Eastland 2024, pet. ref'd) (concluding that the complained-of testimony, which consisted of twenty-two pages out of the State's 180-page case-in-chief, was "only a small portion of trial" and could "hardly be deemed to be excessive"); *see also Claudio v. State*, No. 11-22-00141-CR, 2023 WL 4629037, at *5 (Tex. App.—Eastland July 20, 2023, no pet.) (mem. op., not designated for publication) (concluding the same where the amount of time that was dedicated to offer and admit the photographs only spanned two and one-half pages of the record). This factor weighs in favor of admission.

4. *Balancing the Factors*

We have considered all the aforementioned factors and conclude that the factors weigh in favor of the admission of the photographs. *See Hart*, 688 S.W.3d at 891; *Gigliobianco*, 210 S.W.3d at 641–42. The photographs, though prejudicial (as may be argued regarding photographs taken of any murder victim), were neither unfairly prejudicial nor lacking in probative value. *See Luna*, 687 S.W.3d at 104 ("Rule 403 is concerned not with prejudicial evidence, but with evidence that is *unfairly* prejudicial."). Thus, the trial court did not abuse its discretion in admitting evidence of the photographs under Rule 403. *See Herrera*, 676 S.W.3d at 908. We overrule Appellant's second issue.

## IV. *Exclusion of Appellant's Out-of-Court Statements*

In his third issue on appeal, Appellant argues that trial court improperly sustained the State's objection to Appellant's statements made during his interrogation because the statements are admissible under Rule 107 of the Texas Rules of Evidence. *See* TEX. R. EVID. 107.

### A. *Standard of Review and Applicable Law*

As discussed *supra*, a trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Rhomer*, 569 S.W.3d at 669. We will uphold the trial court's ruling on the exclusion of evidence if the ruling is within the "zone of reasonable disagreement." *Inthalangsy*, 634 S.W.3d at 754.

Rule 107, known as the rule of optional completeness, provides:

> If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent.

TEX. R. EVID. 107. The applicability of Rule 107, however, requires more than a mere reference to an omitted statement. *Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011). Admission under the rule requires that the omitted statement be "necessary to fully and fairly explain a matter 'opened up' by the adverse party." *Walters v. State*, 247 S.W.3d 204, 218 (Tex. Crim. App. 2007); *Lewis v. State*, No. 11-16-00336-CR, 2018 WL 5986977, at *6 (Tex. App.—Eastland Nov. 15, 2018, no pet.) (mem. op., not designated for publication) ("Rule 107 is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter 'opened up' by the adverse party."). This rule "is designed to reduce the possibility of the jury receiving

26

a false impression from hearing only a part of some act, conversation, or writing." *Pena*, 353 S.W.3d at 814 (quoting *Walters*, 247 S.W.3d at 218).

B. *Analysis*

At trial, the State objected to Appellant pursuing a line of questioning regarding Appellant's waiver of his *Miranda* rights when Appellant was not challenging the validity of his waiver and instead sought to admit the following out-of-court statements: "I don't need an attorney. I didn't do nothing." The State argued that the statements were self-serving hearsay, and the rule of optional completeness did not apply because there was no confusion in the jury's mind about Appellant's waiver of his rights. The trial court agreed and sustained the State's objection. On appeal, Appellant argues as he did before the trial court—namely, that Rule 107 applies here because the State introduced evidence of his waiver. *See* TEX. R. EVID. 107. Appellant asserts on appeal that "the State made it appear that the Defendant merely waived his right to remain silent in response to each warning. This testimony was misleading."

Yet, Appellant fails to demonstrate that his statements—"I don't need an attorney. I didn't do nothing."—were necessary to a full understanding or explanation of whether Appellant intentionally and knowingly waived his Miranda rights; a matter that was never in dispute. *See Delapaz v. State*, 297 S.W.3d 824, 827 (Tex. App.—Eastland 2009, no pet.) ("Rule 107 is inapplicable in this case because a prior act, conversation, declaration, or written or recorded statement was not at issue."). Appellant did not challenge whether he waived his *Miranda* rights, and the record before us is without any evidence to the contrary. *See, e.g., Deere v. State*, 631 S.W.3d 762, 777 (Tex. App.—Eastland 2021, pet. ref'd) (concluding the trial court did not abuse its discretion in excluding Appellant's consent statements when

27

the record was "devoid of any evidence indicating that portions of the audio would support Appellant's contention" at trial). Further, as to his claim of innocence maintained throughout the case, there could be no jury confusion. Therefore, there was no false impression created by the State that required clarification by Appellant. *See Deere*, 631 S.W.3d at 777; *see also Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009) ("A party opens the door by leaving a false impression with the jury that invites the other side to respond." (citing *Daggett v. State*, 187 S.W.3d 444, 452 (Tex. Crim. App. 2005)); *see also Bailey v. State*, No. 11-09-00223-CR, 2011 WL 2732596, at *4 (Tex. App.—Eastland June 30, 2011, no pet.) (mem. op., not designated for publication) ("The purpose of the rule is to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing."). Accordingly, the trial court did not abuse its discretion when it sustained the State's objection. *See Rhomer*, 569 S.W.3d at 669. We overrule Appellant's third issue.

## V. *Appellant's Invocation of Miranda Rights*

In his fourth issue, Appellant argues the trial court abused its discretion in admitting his statements made two hours, forty-six minutes and eleven seconds into the interrogation after he had allegedly invoked his right to remain silent by stating, "Oh, man. Whatever, man." Well, then, I'm done talking, man." Within the objection by Appellant's trial counsel to introduction of further statements made by Appellant during interrogation, he stated, "I don't know that he said he wanted to stop the interview, but he said that's it, I'm done speaking with you all." Without further argument or explanation from trial counsel, the trial court responded, "Okay. Overruled."

A. *Standard of Review and Applicable Law*

As we have said, we review a trial court's decision to admit evidence under an abuse of discretion standard and will uphold the trial court's ruling if the ruling is within the "zone of reasonable disagreement." *Inthalangsy*, 634 S.W.3d at 754; *Rhomer*, 569 S.W.3d at 669.

Under *Miranda*, if an individual in custody "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda v. Arizona*, 384 U.S. 436, 473–74 (1966); *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008). However, a police officer need not stop questioning a suspect unless the suspect unambiguously invokes his right to remain silent. *Sandoval v. State*, 665 S.W.3d 496, 520 (Tex. Crim. App. 2022) ("[A] suspect's invocation of his right must be unambiguous, and there is no requirement that law enforcement clarify ambiguous remarks."); *Griffin v. State*, No. 11-14-00077-CR, 2016 WL 1294447, at *4 (Tex. App.—Eastland Mar. 31, 2016, no pet.) (mem. op., not designated for publication). An officer does not violate a suspect's right to remain silent if the officer attempts to clarify whether the suspect wishes to remain silent when faced with an ambiguous invocation, and the suspect may thereafter choose to continue to speak about the offense. *Day v. State*, 696 S.W.3d 720, 730 (Tex. App.—San Antonio 2024, pet. ref'd); *Williams v. State*, 257 S.W.3d 426, 433 (Tex. App.—Austin 2008, pet. ref'd). A suspect may render his statement ambiguous by continuing to talk after the person states the he or she is done talking. *Equivel v. State*, No. 04-08-00730-CR, 2009 WL 3222626, at *3–4 (Tex. App.—San Antonio Oct. 7, 2009, no pet.) (mem. op., not designated for publication). Courts consider the totality of the circumstances when determining whether a suspect unambiguously invoked his right to remain silent. *Day*, 696 S.W.3d at 730;

*see also Majano v. State*, No. 14-21-00684-CR, 2023 WL 2585916, at *5 (Tex. App.—Houston [14th Dist.] Mar. 21, 2023, pet. ref'd) (mem. op., not designated for publication); *Griffin*, 2016 WL 1294447, at *4.

B. *Analysis*

At the outset, we reiterate that it is undisputed that Appellant was Mirandized and that he waived his rights at the start of the interview. Appellant narrowly argues that, more than two hours into the interrogation, he allegedly invoked his right to remain silent by stating: "Oh, man. Whatever, man. Well, then, I'm done talking, man." It is unknown what exactly was stated immediately before or after Appellant's alleged objection to further interrogation and alleged invocation of his right to remain silent. The record contains neither a complete transcript nor the audio recording from the interview. The transcript admitted at trial as State's Exhibit No. 354 was a single page document containing Appellant's statements purportedly made six minutes after Appellant simply said, "I'm done talking, man." On this record, we cannot conclude that the trial court abused its discretion in admitting the further statements. *See Rhomer*, 569 S.W.3d at 669; *Day*, 696 S.W.3d at 730; *see also Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996) (holding defendant's statements that, "I can't say more than that. I need to rest" were not unambiguous invocation of the right to remain silent); *see Lawson v. State*, No. 06-22-00009-CR, 2022 WL 16993353, at *5 (Tex. App.—Texarkana Nov. 17, 2022, no pet.) (appellant's statement that he was "done" was ambiguous in light of appellant continuing to talk to the investigators); *Esquivel v. State*, No. 04-08-00730-CR, 2009 WL 3222626, at *4 (Tex. App.—San Antonio Oct. 7, 2009, no pet.) (mem. op., not designated for publication) (same); *see also Martinez v. State*, 2024 WL 536372, at *1–2 (Tex. App.—Amarillo Feb. 9, 2024, no pet.) (mem. op., not designated for

publication) (appellant was properly Mirandized, and continued to speak with investigators for three hours).

In *Lawson*, after the appellant stated that he was "done talking" he continued to talk and thus "rendered his statement ambiguous." 2022 WL 16993353 at *5. Here, without more—the complete record, full context and totality of the circumstances—we cannot say that Appellant unambiguously invoked his right to remain silent. *See Sandoval v. State*, 665 S.W.3d 496, 520 (Tex. Crim. App. 2022).

Even if we were to assume the trial court abused its discretion, the admitted statements were harmless. The violation of an appellant's Fifth Amendment right to remain silent is constitutional error subject to the harm analysis under Rule 44.2(a) of the Texas Rules of Appellate Procedure. *Ramos*, 245 S.W.3d at 419; *see* TEX. R. APP. P. 44.2(a). Pursuant to Rule 44.2(a), we must reverse the judgment unless, after reviewing the record as a whole, we determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a); *Finley v. State*, 707 S.W.3d 320, 335 (Tex. Crim. App. 2024). "An error does not contribute to the verdict if it is unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Green v. State*, 713 S.W.3d 865, 888 (Tex. Crim. App. 2025) (internal quotation marks omitted). "Further, the evaluation is performed in a neutral manner, not in the light most favorable to the prosecution." *Hughes v. State*, 691 S.W.3d 504, 523 (Tex. Crim. App. 2024). In our analysis, we consider the "nature of the error, its emphasis by the prosecution, its probable implications, and the weight the jury likely would have given it during deliberations." *Green*, 713 S.W.3d at 888; *Smith v. State*, 631 S.W.3d 484, 498 (Tex. App.—Eastland 2021, no pet.).

The statements at issue here were limited in scope and, in part, repetitive. Appellant told officers that Armenta had taken his drugs from him and that the drugs had belonged to an individual who, as a result, now had a reason to kill Appellant. Appellant states as much in his text messages admitted at trial and alluded in statements to officers that he might end up in the same position "that happened to her." *Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998) ("It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged." (quoting *Crocker v. State*, 573 S.W.2d 190, 201 (Tex. Crim. App. 1978))). Appellant then told officers that his texts sent to Armenta were meant "to scare her and make her return what she took." While Appellant's true motive for sending Armenta threatening text messages was unknown, apart from this statement to officers, his statements in defense of his undisputed behavior (i.e., sending text messages) was no more probative of his guilt than the undisputed behavior itself. *See Green*, 713 S.W.3d at 888; *see, e.g.*, *Joiner v. State*, No. 04-16-00701-CR, 2018 WL 3861672, at *8 (Tex. App.—San Antonio Aug. 15, 2018, pet. ref'd) (mem. op., not designated for publication) (considering whether the objected-to statements provided "any negative evidence connecting Joiner to the alleged offense").

Although we do not focus on whether the jury verdict was supported by the evidence, we have already discussed the overwhelming evidence of guilt presented at trial. *See Smith*, 631 S.W.3d at 498 ("[T]he presence of 'overwhelming evidence of guilt is a factor to be considered.'" (quoting *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002))). Having done so, we are convinced that the jury would place little, if any, weight on the statements made following Appellant's invocation of his Fifth Amendment right to remain silent. *See Dowthitt*, 931 S.W.2d at 257,

263 (deciding that the defendant's statement allegedly invoking his right to remain silent was ambiguous and that admitting his subsequent statements, considering the entire record, did not harm the defendant).  We therefore conclude that even if the statements were erroneously admitted, it was harmless error, and we overrule Appellant's fourth issue.

## VI.  *This Court's Ruling*

We affirm the judgments of the trial court.


W. BRUCE WILLIAMS

JUSTICE


August 14, 2025

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.